924 A.2d 1175

**Deandre SMITH**

v.

**STATE of Maryland.**

No. 135, Sept. Term, 2006.

Court of Appeals of Maryland.

June 8, 2007.

566

David P. Kennedy, Assistant Public Defender (Nancy S. Forster, Public Defender of Baltimore), on brief, for appellant.

Mary Ann Ince, Assistant Attorney General (Douglas F. Gansler, Attorney General of Maryland, of Baltimore), on brief, for appellee.

Argued before BELL, C.J., RAKER, CATHELL, HARRELL, BATTAGLIA, GREENE and ALAN M. WILNER, (retired, specially assigned), JJ.

BATTAGLIA, J.

The case *sub judice* presents this Court with the task of determining whether, once a circuit court sitting as a criminal court transfers jurisdiction of a case to the juvenile court for disposition, the juvenile court in turn possesses the power to return the case to the criminal court.[1] Because we hold that the juvenile court does not possess such power, we shall

---

1. The juvenile court is the circuit court for a county sitting as a juvenile court. *See* Md.Code (1974, 2001 Repl.Vol.), § 3–8A–01(i) of the Courts & Judicial Proceedings Article (CJP). For purposes of our discussion, we refer to the circuit court sitting as a juvenile court as "juvenile court," and to the circuit court sitting as a criminal court as "criminal court."

vacate the sentence imposed by the criminal court and remand the case to the juvenile court.

## I.  Introduction

On March 31, 2005, appellant, Deandre Smith, then seventeen years of age, was indicted for one count of motor vehicle theft in violation of Maryland Code, Section 7–105 of the Criminal Law Article (CL), two counts of theft over $500 in violation of CL Section 7–104, one count of unauthorized use of an motor vehicle in violation of CL Section 7–203, two counts of willful and malicious destruction of property in violation of CL Section 6–301, one count of attempting to flee and elude a police officer in a vehicle in violation of Maryland Code, Section 21–904(e) of the Transportation Article (TR), one count of attempting to flee and elude a police officer on foot in violation of TR Section 21–904(c), one count of willful failure to obey a reasonable and lawful order of a law enforcement officer in violation of CL 10–201(C)(3), one count of obstructing justice by resisting arrest, and one count of carrying a handgun in violation of CL Section 4–203(a)(1).   Although Smith was 17 at the time of the offenses, the handgun violation was an "excluding charge" over which the juvenile court did not have jurisdiction under Maryland Code, Section 3–8A–03 of the Courts & Judicial Proceedings Article (CJP).   Smith, nevertheless, filed a motion to remove the proceedings to juvenile court under Maryland Code, Section 4–202 of the Criminal Procedure Article (CP), which was denied by Judge Graydon S. McKee of the Circuit Court for Prince George's County.

Subsequently, Smith and the State entered into a plea agreement by which Smith pled guilty to one count of motor vehicle theft and one count of fleeing and eluding an officer in a vehicle, in exchange for having the disposition of his charges handled by the juvenile court pursuant to CP Section 4–202.2, because the handgun charge would be nolle prossed.   Judge Michael P. Whalen, sitting as judge of the criminal court, accepted the plea, found that Smith was amenable to treatment available in the juvenile justice system, transferred

jurisdiction of the case to the juvenile court, and ordered the case sealed.[2] Judge McKee conducted the disposition hearing and committed Smith to the Department of Juvenile Services, which placed him in Bowling Brook Preparatory School.

Smith subsequently escaped, was apprehended and appeared again before the juvenile court. Judge McKee found that Smith was not amenable to treatment in the juvenile justice system,[3] ordered the original case unsealed, and remanded Smith to the criminal court for sentencing. On remand, Smith was sentenced to four years imprisonment on the motor vehicle theft charge, with all but six months suspended, followed by three years supervised probation; with respect to the fleeing and eluding an officer in a vehicle charge, Smith was sentenced to one year imprisonment, suspended, concurrent with the sentence for the motor vehicle theft charge.

Smith noted an appeal to the Court of Special Appeals and subsequently, this Court issued, on its own initiative, a writ of certiorari prior to any proceedings in the intermediate appellate court. *Smith v. State*, 397 Md. 107, 916 A.2d 256 (2007). Smith's brief presents the following issue:

----

**2.** Judge McKee, who was assigned to Smith's case, was unavailable for the hearing on the guilty plea. Judge Whalen conducted Smith's guilty plea proceeding, under an agreement that the disposition would be deferred pending Judge McKee's availability.

**3.** Between his escape from Bowling Brook and his apprehension, Smith participated in several burglaries in Carroll County and was charged with one count of third-degree burglary in violation of CL Section 6–204, one count of fourth-degree burglary in violation of CL Section 6–205, one count of theft over $500 in violation of CL Section 7–104, and one count of malicious destruction of property under $500 in violation of CL Section 6–301. Smith was found guilty of third-degree burglary based upon an agreed statement of facts; the State nolle prossed the remaining charges. A question regarding mootness was raised at oral argument, in light of Smith's coming of age and his conviction as an adult offender. We will reach the issue in the present case because if Smith's sentence in the instant case remains, it would constitute a conviction in any subsequent sentencing. *See McMannis v. State*, 311 Md. 534, 539, 536 A.2d 652, 654 (1988) (noting that because an enhanced prison term for a subsequent conviction was a collateral consequence, the case was not moot).

Once the circuit court sitting as a criminal court transfers a case to the juvenile court for disposition under § 4–202.2 of the Maryland Criminal Proceedings Code, does the juvenile court thereafter lack the power to remand the case to the criminal court, and does the criminal court lack jurisdiction to impose a sentence?

We shall hold that once a criminal court transfers the case to the juvenile court for disposition, the juvenile court cannot return the case to the criminal court.

## II. Discussion

Smith contends that once a criminal court transfers jurisdiction of a case to a juvenile court for disposition under CP Section 4–202.2, the juvenile court does not possess the power to remand the case to the criminal court. Smith argues that CP Section 4–202.02 parallels CP Section 4–202, so that our opinions in *In re Glenn S.*, 293 Md. 510, 445 A.2d 1029 (1982) and *In re Franklin P.*, 366 Md. 306, 783 A.2d 673 (2001) would prevent the transfer that occurred in this case. Smith also contends that there is no statutory provision allowing the criminal court to retain jurisdiction over the case after it is transferred pursuant to Section 4–202.2 and to return the case to the criminal court. Additionally, Smith argues that remanding the case to the criminal court for sentencing, after the disposition in juvenile court, would be contrary to the general principles of the juvenile justice system and would violate double jeopardy.[4]

The State, conversely, contends that, after the criminal court transfers jurisdiction of a case to the juvenile court for disposition under CP Section 4–202.2, the juvenile court retains the power to remand the case to the criminal court. The

---

4. Because we decide this case on a non-constitutional ground, we decline to address the constitutional issue. *See McCarter v. State*, 363 Md. 705, 712, 770 A.2d 195, 199 (2001) (stating that, in Maryland, it is a well "established principle that a court will not decide a constitutional issue when a case can properly be disposed of on a non-constitutional ground"), citing *Harryman v. State*, 359 Md. 492, 503 n. 6, 754 A.2d 1018, 1024 n. 6 (2000).

State argues that although the legislative intent of CP Section 4–202.2 is to afford juvenile offenders rehabilitative treatment opportunities, the Legislature could not have intended to preclude a remand to the criminal court for sentencing if the juvenile acts inimically to treatment. Further, the State asserts that the analogy drawn between CP Sections 4–202 and 4–202.2 is inapplicable because the transfer of jurisdiction in Section 4–202.2 is limited to disposition, rather than to transfer jurisdiction to the juvenile court.

The juvenile courts are created by statute and have limited jurisdiction, ordinarily possessing exclusive original jurisdiction over youthful offenders alleged to have committed delinquent acts.[5] CJP § 3–8A–03. Nevertheless, subsection (d) of Section 3–8A–03 identifies an exception, applicable to the present case, when a juvenile is charged with a violation of CL Section 4–203, unlawfully carrying a handgun:

(d) *Limitations.*—The court does not have jurisdiction over:

\* \* \*

(4) A child at least 16 years old alleged to have committed any of the following crimes, as well as all other charges against the child arising out of the same incident, unless an

---

5. Ordinarily, the juvenile courts have jurisdiction over a child under the age of 18 alleged to be delinquent. *See* CJP § 3–8A–03 of the Courts and Judicial Proceedings Article. The juvenile courts, however, retain jurisdiction over an individual adjudicated delinquent until the age of 21. CJP Section 3–8A–07 states in part:

(a) *Duration.*—If the court obtains jurisdiction over a child under this subtitle, that jurisdiction continues until that person reaches 21 years of age unless terminated sooner.

\* \* \*

(c) *Termination.*—Unless otherwise ordered by the court, the court's jurisdiction is terminated over a person who has reached 18 years of age when he is convicted of a crime, including manslaughter by automobile, unauthorized use or occupancy of a motor vehicle, any violation of Title 2, Subtitle 5 or § 3–211 of the Criminal Law Article, or § 21–902 of the Transportation Article, but excluding a conviction for a violation of any other traffic law or ordinance or any provision of the State Boat Act, or the fish and wildlife laws of the State.

order removing the proceeding to the court has been filed under § 4–202 of the Criminal Procedure Article:

\* \* \*

(xvii) A violation of § 4–203, § 4–204, § 4–404, or § 4–405 of the Criminal Law Article.

CJP § 3–8A–03 (d)(4)(xvii).

Although a charge may be excluded from the juvenile court's jurisdiction under CJP Section 3–8A–03 (d), the criminal court may "reverse waive"[6] jurisdiction to the juvenile court before trial or before a plea is entered under CP 4–202, pursuant to various transfer criteria:

(b) *When transfer allowed.*—Except as provided in subsection (c) of this section, a court exercising criminal jurisdiction in a case involving a child may transfer the case to the juvenile court before trial or before a plea is entered under Maryland Rule 4–242 if:

(1) the accused child was at least 14 but not 18 years of age when the alleged crime was committed;

(2) the alleged crime is excluded from the jurisdiction of the juvenile court under § 3–8A–03(d)(1), (4), or (5) of the Courts Article; and

(3) the court determines by a preponderance of the evidence that a transfer of its jurisdiction is in the interest of the child or society.

\* \* \*

(d) *Transfer criteria.*—In determining whether to transfer jurisdiction under subsection (b) of this section, the court shall consider:

(1) the age of the child;

---

**6.** "Reverse waiver" is the transfer of jurisdiction from the criminal court to the juvenile court; "waiver" is the transfer from the juvenile court to the criminal court. *See In re Franklin P.,* 366 Md. at 330–33, 783 A.2d at 687–89; *In re Glenn S.,* 293 Md. at 511–12, 445 A.2d at 1029–30.

(2) the mental and physical condition of the child;

(3) the amenability of the child to treatment in an institution, facility, or program available to delinquent children;

(4) the nature of the alleged crime; and

(5) the public safety.

\* \* \*

(g) *Procedures on transfer—Juvenile court.*—If the court transfers its jurisdiction under this section, the court may order the child held for an adjudicatory hearing under the regular procedure of the juvenile court.

CP § 4–202(b), (d), and (g). CP Section 4–202.2 codifies a law enacted by the General Assembly in 2002, 2002 Maryland Laws, Chapter 159, which permits a criminal court to "reverse waive" jurisdiction to the juvenile court after trial, for disposition, if all the charges that resulted in excluding jurisdiction from the juvenile court had been eliminated:

(a) *In general.*—At sentencing, a court exercising criminal jurisdiction in a case involving a child shall determine whether to transfer jurisdiction to the juvenile court if:

(1) as a result of trial or a plea entered under Maryland Rule 4–242, all charges that excluded jurisdiction from the juvenile court under § 3–8A–03(d)(1) or (4) of the Courts Article do not result in a finding of guilty; and

(2)(i) pretrial transfer was prohibited under § 4–202(c)(3) of this subtitle; or

(ii) the court did not transfer jurisdiction after a hearing under § 4–202(b) of this subtitle.

(b) *Considerations.*—In determining whether to transfer jurisdiction under subsection (a) of this section, the court shall consider:

(1) the age of the child;

(2) the mental and physical condition of the child;

(3) the amenability of the child to treatment in an institution, facility, or program available to delinquent children;

(4) the nature of the child's acts as proven in the trial or admitted to in a plea entered under Maryland Rule 4–242; and

(5) public safety.

(c) *May not consider transfer.*—The court may not consider transferring jurisdiction to the juvenile court under this section if:

(1) under the terms of a plea agreement entered under Maryland Rule 4–243, the child agrees that jurisdiction is not to be transferred; or

(2) pretrial transfer was prohibited under § 4–202(c)(1) or (2) of this subtitle.

\* \* \*

(e) *Disposition.*—(1) If the court transfers its jurisdiction to the juvenile court, the court shall conduct a disposition under the regular procedures of the juvenile court.

(2) The record of the hearing and of the disposition shall be transferred to the juvenile court, subject to § 3–8A–27 of the Courts Article.

CP § 4–202.2(a), (b), (c), and (e).

We have held that juvenile courts, as statutorily created courts of limited jurisdiction, may exercise only those powers expressly designated by statute. In *In re Franklin P.*, 366 Md. at 306, 783 A.2d at 673, we considered whether a juvenile court had the authority to rescind its order waiving jurisdiction to the criminal court. In that case, Franklin P. was charged with various offenses, and the State successfully petitioned the juvenile court to waive jurisdiction under CJP Section 3–817 to the criminal court.[7] The juvenile court

---

**7.** As applied in *In re Franklin P.*, CJP Section 3–817 provided in part that the juvenile court "may waive the exclusive jurisdiction conferred by § 3–804 of this subtitle with respect to a petition alleging delinquency by . . . a child." Section 3–817 was codified without relevant change as CJP Section 3–8A–06 in 2001. 2001 Md. Laws, Chap. 415. CJP Section 3–8A–06, entitled "Waiver of jurisdiction," provides in pertinent part:

subsequently issued an order vacating that waiver, which we determined was impermissible:

In *Austin v. Director of Patuxent Institution,* we stated, quoting from *Scherr v. Braun,* that "[n]o principle is better established than that in exercising a statutory power, a court is without jurisdiction unless it complies with the statute." We went on to hold:

"[I]t is apparent that the court, in the exercise of the special jurisdiction conferred on it by statute, was required to follow the only course of action prescribed by the statute when, as here, the defendant was found *not* to be a defective delinquent. If new trials are to be granted

---

(a) *How waived.*—The court may waive the exclusive jurisdiction conferred by § 3–8A–03 of this subtitle with respect to a petition alleging delinquency by:

(1) A child who is 15 years old or older; or

(2) A child who has not reached his 15th birthday, but who is charged with committing an act which if committed by an adult, would be punishable by death or life imprisonment.

\* \* \*

(d) *Unfit subject for juvenile rehabilitation measures.*—(1) The court may not waive its jurisdiction under this section unless it determines, from a preponderance of the evidence presented at the hearing, that the child is an unfit subject for juvenile rehabilitative measures. (2) For purposes of determining whether to waive its jurisdiction under this section, the court shall assume that the child committed the delinquent act alleged.

(e) *Criteria.*—In making its determination, the court shall consider the following criteria individually and in relation to each other on the record:

(1) Age of the child;

(2) Mental and physical condition of the child;

(3) The child's amenability to treatment in any institution, facility, or program available to delinquents;

(4) The nature of the offense and the child's alleged participation in it; and

(5) The public safety.

(f) *Procedures.*—If jurisdiction is waived under this section, the court shall order the child held for trial under the regular procedures of the court which would have jurisdiction over the offense if committed by an adult. The petition alleging delinquency shall be considered a charging document for purposes of detaining the child pending a bail hearing.

in defective delinquent proceedings, the Legislature, not the Courts, should provide for them."

* * *

Petitioner is asking our Court to grant to the Juvenile Court the power to waive "jurisdiction" back to that court by way of its modification of its original waiver order. The waiver statute contains no provision permitting the Juvenile Court to rescind its waiver order once authority is vested in the criminal court.

* * *

That, the juvenile court has no power to do.

*Id.* at 333–334, 783 A.2d at 689–90 (citations omitted) (emphasis in original).

Further, in *In re Glenn S.,* 293 Md. at 510, 445 A.2d at 1029, a case similar to the present case except for the presence of Section 4–202.2, we considered whether a juvenile court could remand jurisdiction to the criminal court after the criminal court had reverse waived jurisdiction to the juvenile court, pursuant to Section 594A of Article 27 of the Maryland Code (1957, 1982 Repl.Vol.).[8] In that case, Glenn S., a juve-

---

8. Section 594A of Article 27 of the Maryland Code was the statutory predecessor to CP Section 4–202. As interpreted in *In re Glenn S.,* Section 594A stated:

(a) *Transfer to juvenile court.*—In any case involving a child who has reached 14 years of age but has not reached 18 years of age at the time of any alleged offense excluded under the provisions of § 3–804(d)(1) or (d)(4) of the Courts Article, the court exercising jurisdiction may transfer the case to the juvenile court if a waiver is believed to be in the interests of the child or society.

(b) *Determination as to waiver of jurisdiction.*—In making a determination as to waiver of jurisdiction the court shall consider the following:

(1) Age of child;

(2) Mental and physical condition of child;

(3) The child's amenability to treatment in any institution, facility, or program available to delinquents;

(4) The nature of the alleged offense; and

nile, allegedly committed a robbery with a deadly weapon. Subsequently, the criminal court reverse waived jurisdiction of the case to the juvenile court for adjudication, whereupon Glenn S. was placed in Waxter Children's Center pending trial. He escaped, and thereafter the juvenile court ordered that jurisdiction be returned to the criminal court because Glenn S. was not fit for rehabilitation in the juvenile justice system. We concluded that the juvenile court did not have the power to return the case to the criminal court, noting that the powers of the juvenile court, those granted by statute, did not include the power to modify the criminal court's order reverse waiving the case to the juvenile court:

> The juvenile causes provisions ... do not expressly or impliedly allow the juvenile court to modify decisions of the circuit court sitting in a criminal case. Because courts of special jurisdiction exercise only those powers granted to them by statute, the juvenile court in this case had no power to vacate the order of the circuit court, thus returning the case to the criminal side of the circuit court. Although the juvenile court has the statutory power to transfer jurisdiction of a case to the circuit court pursuant to § 3–817 of the Courts Article, that section only applies in cases where the juvenile court has exclusive original jurisdiction. Because the charge here was robbery with a deadly weapon, original jurisdiction was in the circuit court, ... § 3–817 has no application. Jurisdiction in this case was originally in the circuit court, was transferred to the juvenile court and it remains there.

(5) The public safety.

\* \* \*

(d) *Procedures of the juvenile court.*—If the jurisdiction is waived, the court may order the person held for trial under the regular procedures of the juvenile court.

Maryland Code (1957, 1982 Repl.Vol.), Article 27, § 594A.

In 2001, Section 594A was recodified without relevant change as CP Section 4–202. 2001 Md. Laws, Chap. 10. Section 4–202 was repealed and reenacted without relevant change in 2002. 2002 Md. Laws, Chap. 159.

*Id.* at 516–17, 445 A.2d at 1032 (citations omitted). The lesson of *In re Glenn S.* and *In re Franklin P.,* thus, is that juvenile courts only have the powers granted them by statute, and to those we now turn.

■■■ Our goal, when interpreting statutes, is to "identify and effectuate the legislative intent underlying the statute(s) at issue." *Gilmer v. State,* 389 Md. 656, 662, 887 A.2d 549, 553 (2005); *Cain v. State,* 386 Md. 320, 327, 872 A.2d 681, 685 (2005); *Derry v. State,* 358 Md. 325, 335, 748 A.2d 478, 483 (2000); *Pete v. State,* 384 Md. 47, 57–58, 862 A.2d 419, 425 (2004); *Graves v. State,* 364 Md. 329, 345, 772 A.2d 1225, 1235 (2001). *See also Harris v. State,* 331 Md. 137, 148–49, 626 A.2d 946, 951 (1993) (" '[T]he search for [legislative] intent is most accurately described as an effort to discern some general purpose, aim, or policy of the statute.' "); *In re Keith G.,* 325 Md. 538, 542, 601 A.2d 1107, 1109 (1992); *Mustafa v. State,* 323 Md. 65, 73, 591 A.2d 481, 485 (1991) ("Our focus is, therefore, centered upon the statute's policy or purpose."). The best source of legislative intent is the statute's plain language, and when the language is clear and unambiguous, our inquiry ordinarily ends there. *Gilmer,* 389 Md. at 663, 887 A.2d at 553; *Cain,* 386 Md. at 327, 872 A.2d at 685; *Pete,* 384 Md. at 57–58, 862 A.2d at 425; *Drew,* 379 Md. at 327, 842 A.2d at 6; *Whack v. State,* 338 Md. 665, 672, 659 A.2d 1347, 1350 (1995); *State v. Thompson,* 332 Md. 1, 6–7, 629 A.2d 731, 734 (1993). "In the interest of completeness, however, we may look at the purpose of the statute and compare the result obtained by use of its plain language with that which results when the purpose of the statute is taken into account." *Harris v. State,* 331 Md. 137, 146, 626 A.2d 946, 950 (1993). *See also Robey v. State,* 397 Md. 449, 454, 918 A.2d 499, 502 (2007); *Stanley v. State,* 390 Md. 175, 185, 887 A.2d 1078, 1084 (2005). In other words, the resort to legislative history is a confirmatory process; it is not undertaken to seek contradiction of the plain meaning of the statute. *Robey,* 397 Md. at 454, 918 A.2d at 502; *Stanley,* 390 Md. at 185, 887 A.2d at 1084. In such instances, we may find useful the context of a statute, the

overall statutory scheme, and archival legislative history of relevant enactments. *Robey*, 397 Md. at 454, 918 A.2d at 502.

The State argues that the CP Sections 4–202.2 and 4–202 are different because the transfer of jurisdiction in Section 4 – 202.2 is limited to disposition. Section 4–202.2, however, does not include any provision permitting the juvenile court to remand the case to the criminal court. *See* CP § 4–202.2. In this respect, the reasoning of *In re Glenn S.* is pertinent; the juvenile court can only exercise those powers explicitly provided to the court by statute. The only statutory provision permitting the juvenile court to transfer jurisdiction to the criminal court, other than when jurisdiction is transferred automatically under CJP Section 3–8A–07, is CJP Section 3–8A–06, which permits a juvenile court to waive jurisdiction to the criminal court before trial under certain conditions. That section, however, by its express terms, is applicable only when the juvenile court has "exclusive jurisdiction" initially, which the juvenile court did not have in this case because Smith was charged with the "excluding charge," the handgun violation.

The State argues, nevertheless, that although the legislative history of CP Section 4–202.2 indicates that the section was enacted to afford juvenile offenders rehabilitative treatment opportunities, the Legislature could not have intended to preclude a remand to the criminal court for sentencing if the juvenile's actions reflect that he or she is not amenable to treatment. To the contrary, however, rehabilitation of a juvenile is not a single event; it is an on-going process. *See Lopez–Sanchez v. State*, 388 Md. 214, 247–49, 879 A.2d 695, 714–15 (2005) (Wilner, J., concurring) (noting that the purpose of the Juvenile Causes statute is to provide a program of rehabilitation consistent with the child's best interest and protection of the public interest, such that the juvenile court has continuing jurisdiction to assist the rehabilitation of the juvenile); *Raiford v. State*, 296 Md. 289, 294, 462 A.2d 1192, 1194 (1983) (" 'The basic difference, however, between trial as an adult and trial as a juvenile lies not in the fact-finding processes, but in the *procedures looking to rehabilitation* after a determination that an individual did in fact commit acts

which were violations of the criminal statutes of this State.'"), quoting *Wiggins v. State,* 275 Md. 689, 709, 344 A.2d 80, 91 (1975) (emphasis added).

To permit the juvenile court to reverse the decision of the criminal court that the juvenile is amenable to treatment and return the case to the criminal court would contradict the nature and purpose of the juvenile justice system.[9] The juvenile courts were created with the specific purpose "[t]o provide for the care, protection, and wholesome mental and physical development of children coming within the provisions of this subtitle; and to provide for a program of treatment, training, and rehabilitation consistent with the child's best interests and the protection of the public interest." CJP § 3-8A-02 (a).[10] Additionally, we have repeatedly noted that the Legislature intended the juvenile justice system to be "guided generally by principles of protection and rehabilitation of the individual rather than a societal goal of punishment and retribution." *Moore v. Miley,* 372 Md. 663, 672-73, 814 A.2d 557, 563 (2003); *In re Anthony R.,* 362 Md. 51, 72, 763 A.2d 136, 148 (2000) (remarking that the juvenile court jurisdiction statutes were "written mindful of the special goals of the juvenile justice system," particularly "to rehabilitate and treat juvenile delinquents so that they become useful and productive members of society"); *Moquin v. State,* 216 Md. 524, 528, 140 A.2d 914, 916 (1958) (iterating that the juvenile court system does not contemplate punishing children found to be delinquent, but rather "contemplates an attempt to correct and rehabilitate").

---

9. *See also Crosby v. State,* 71 Md.App. 56, 66, 523 A.2d 1042, 1046 (1987) ("To read the statutes otherwise and permit multiple waivers, waiver between courts could unproductively clog dockets and create a sense of uncertainty of responsibility within the judicial system. Additionally, the ultimate disposition of juvenile cases, which should be handled expeditiously, would be unnecessarily delayed by the addition of an extra waiver hearing.").

10. *See* CJP § 3-8A-02 (b) ("This subtitle shall be liberally construed to effectuate these purposes.").

We have also stated that, "[e]ven when this Court has extended 'criminal defendant' type rights to juveniles, the cases explain that the overall proceedings maintain their focus on the special goals of delinquency adjudication." *Moore,* 372 Md. at 673, 814 A.2d at 564; *In re Franklin P.,* 366 Md. at 329–30, 783 A.2d at 687 ("The purpose of the juvenile waiver hearing is not to determine guilt or innocence, but rather to determine whether or not the juvenile is a fit subject for juvenile rehabilitation measures."); *In re Victor B.,* 336 Md. 85, 92, 646 A.2d 1012, 1015 (1994) ("Despite any penal overtones the juvenile justice system may have acquired over the years ... however, the Juvenile Causes Act gives clear indication that juvenile proceedings are not criminal matters and that they retain their 'special and informal nature.'"). Given that "the keystone of Maryland's disposition of juvenile delinquents is that 'the moral responsibility or blameworthiness of the child [is] of no consequence,' such that delinquency adjudication is seen as the opportunity for the State to provide needed rehabilitative intervention," *Moore,* 372 Md. at 673, 814 A.2d at 563–64, quoting *In re Victor B.,* 336 Md. at 91–92, 646 A.2d at 1015, it would contradict the nature of the juvenile justice system to permit the juvenile court, unsatisfied with the progress of a juvenile's rehabilitation, to return Smith to the criminal court for sentencing as an adult.

Moreover, CP Section 4–202.2 clearly was enacted to transfer jurisdiction of the child offender to the juvenile court for the purpose of providing rehabilitation. The legislative history of Section 4–202.2 reflects it was enacted to complement to the provisions of Section 4–202 of the same Article in order to permit the criminal court to reverse waive jurisdiction of the case to the juvenile court in order to provide rehabilitative treatment for the juvenile when the juvenile is not convicted of the offense which precluded the juvenile court from exercising jurisdiction initially. The Senate Judicial Proceedings Committee, in its Floor Report for Senate Bill 428 (2002), reported that the bill rectified a problem with the jurisdiction transfer statute to promote rehabilitation and treatment for juvenile offenders:

THIS BILL ALLOWS A JUVENILE CHARGED AS AN ADULT, BUT NOT CONVICTED OF THE CHARGE THAT WAS THE BASIS FOR BEING EXCLUDED FROM JUVENILE COURT JURISDICTION, TO BE TRANSFERRED BACK TO JUVENILE COURT FOR PURPOSES OF DISPOSITION. THE BILL RESULTED FROM A RECOMMENDATION OF THE COMMISSION ON JUVENILE JUSTICE JURISDICTION.

\* \* \*

In its September 30, 2001 final report to the Governor and General Assembly, the [Commission on Juvenile Justice Jurisdiction] made a number of recommendations. One recommendation was that youth who are initially excluded from the juvenile court's jurisdiction based upon their charges and are only convicted of crimes for which they would not have been excluded should be given the opportunity to bring before a court the merits of a transfer to the juvenile justice system for purposes of disposition.

Senate Judicial Proceedings Committee, Floor Report for Senate Bill 428 (2002) (emphasis in original). Specifically, the Final Report of the Commission on Juvenile Justice Jurisdiction noted:

Maryland is one of 24 states which permits a juvenile who is being prosecuted as an adult in criminal court to petition to have the case transferred to juvenile court for adjudication. An adult criminal court may transfer or "reverse waive" a youth initially excluded from the jurisdiction of the juvenile court to juvenile court if such a waiver is "in the interests of the child or society." The court must consider the same factors that the juvenile court considers when deciding whether to waive a child to adult court (age, mental and physical condition, amenability to treatment, nature of offense, and public safety).

\* \* \*

**It is Unfair for Youth Charged, But Not Convicted Of, an Excluded Offense to Remain in the Adult System**

**Without Further Possibility of Transfer to the Juvenile Justice System.**

Youth who are charged with serious crimes excluded from the jurisdiction of the juvenile court may be convicted of lesser crimes as adults, even if they are not found guilty of the more serious offense which formed the basis for their exclusion from the juvenile justice system. When the charges that are a predicate to criminal jurisdiction do not result in conviction, it is unfair to continue using the original charge as the basis for adult criminal jurisdiction without requiring the criminal court, at sentencing, to consider the possibility of transfer to the juvenile justice system for disposition.

A survey of Commission members conducted by the Subcommittee revealed a Commission consensus that such youth be given the opportunity to bring before the court the merits of a transfer for purposes of disposition.

\* \* \*

**Youth Charged, But Not Convicted Of, an Excluded Offense Should Be Eligible for Transfer to the Juvenile Justice System If Convicted of a Lesser Offense.**

\* \* \*

The law should be amended to require youth who are excluded from juvenile court jurisdiction, but not convicted of the offense which was the basis for that exclusion, to be considered for transfer back to juvenile court for disposition. When the charges that are a predicate to criminal jurisdiction do not result in conviction, the criminal court should be required to consider, at sentencing, whether transfer to juvenile court for disposition is appropriate.

Commission on Juvenile Justice Jurisdiction, Final Report to the Governor and General Assembly 24, 34, 53 (Sept. 30, 2001) (emphasis in original). *See also* Department of Legislative Services, Fiscal Note, Senate Bill 428 (2002) (noting that "[a] criminal court must determine whether to transfer jurisdiction

to juvenile court at sentencing of a case involved a child if, as a result of trial or a plea entered (in lieu of trial), all charges that precluded the juvenile court from exercising jurisdiction did not result in a finding of guilty," and that such a requirement "could result in a shift of cases from the criminal system to the juvenile system.").[11] To permit the juvenile court to remand to the criminal court, when frustrated by the juvenile's progress, would obviate the legislative intent to transfer the juvenile's case in order to engage in the rehabilitation process.

In conclusion, once the criminal court transferred jurisdiction of the case to the juvenile court for disposition of the

---

11. *See also* Written Testimony in Support of Senate Bill 428, Public Justice Center, F. Michael Higginbotham (February 28, 2002) ("Thus, when a child is accused of an excluded offense and is later not found guilty of the offense that excluded him/her from the jurisdiction of the juvenile court, it is both equitable and logical that the court reconsider whether the needs of the child and the public's safety are more adequately addressed by the juvenile justice system as opposed to the adult criminal system. . . . Every year, hundreds of children are charged with an excluded offense, many of them file a transfer motion and many of them are denied. *Many of these same children, however, are ultimately never convicted of the excluded offense; they either plea guilty to a lesser offense or proceed to trial where they are found not guilty of the excluded offense. By operation of Maryland's jurisdictional statute, these children remain in the adult system and receive adult sentences for offenses that would normally invoke the intervention of the juvenile court. To avoid this dilemma, once the excluded offense has disappeared, a criminal court should (re)determine whether the child can be served by the juvenile system without the glare of an excluded offense and accompanying presumption factoring into the court's judgment.")* (emphasis added); Written Testimony in Support of Senate Bill 428, State of Maryland Department of Juvenile Justice, H. Erle Schafer (February 28, 2002) ("Youth who are charged with serious crimes excluded from the jurisdiction of the juvenile court may be convicted of lesser crimes as adults, even if they are not found guilty of the more serious offense which formed the basis for their exclusion from the juvenile justice system. *When the charges that are a predicate to criminal jurisdiction do not result in conviction, it is unfair to continue using the original charge as the basis for adult criminal jurisdiction without requiring the criminal court, at sentencing, to consider the possibility of transfer to the juvenile justice system for disposition.* The law should be amended to require youth who are excluded from juvenile justice jurisdiction, but not convicted of the offense which was the basis for that exclusion, to

charges under CP Section 4–202.2, the juvenile court could not remand the case, and therefore, Smith's sentence as an adult must be vacated.

*JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY VACATED, AND CASE REMANDED TO THE JUVENILE COURT. COSTS TO BE PAID BY PRINCE GEORGE'S COUNTY.*

WILNER, J., concurs.

Concurring Opinion by WILNER, J.

I concur in the Court's Opinion and judgment but offer these additional thoughts. First, although both the Code and this Court have long spoken of the "jurisdiction" of the juvenile and criminal courts (*see,* for example, Md.Code, §§ 3–8A–03–3–8A–07 and §§ 3–803 and 3–804 of the Cts. & Jud. Proc. Article (CJP); *In re Glenn S.,* 293 Md. 510, 445 A.2d 1029 (1982); *In re Victor B.,* 336 Md. 85, 646 A.2d 1012 (1994)), that may, in the present setting, be misleading.

As the Court notes, both the juvenile and criminal courts are now part of the Constitutionally-created Circuit Courts that exist in the State's 23 counties and Baltimore City. Article IV, § 1 of the State Constitution lists the courts that are the repositories of the judicial power of the State, and it does not mention a Juvenile Court. It is the Circuit Courts that are authorized to "hear and decide all cases at law and in equity other than those which fall within the class of controversies reserved by a particular law for the exclusive jurisdiction of some *other forum,*" such as the District Court. *First Federated Com. Tr. v. Comm'r,* 272 Md. 329, 335, 322 A.2d 539, 543 (1974) (Emphasis added). Maryland Rule 16–204 expressly makes the juvenile court part of the family division of the Circuit Courts required to have family divisions. There is no separate Juvenile Court in Maryland.

---

be considered for transfer back to juvenile court for disposition.") (emphasis added).

At one time, the juvenile courts in some counties were not part of the Circuit Court, and that *did* have pure jurisdictional significance, but that is no longer the case. What the Legislature, through a collection of statutes, has effectively done is to designate a part of each Circuit Court as a juvenile court and, with some exceptions, to allocate to that designated part of the Circuit Court the exclusive authority to handle certain kinds of cases involving juveniles. *See* CJP §§ 3–801(i) and 3–8A–01(i), defining the juvenile court as "the circuit court for a county sitting as the juvenile court." In considering that allocation of authority, *viv a vis* the part or division of the Circuit Court that handles criminal matters, we might want to begin speaking of the role and authority of the criminal and juvenile courts in terms of the proper *exercise* of the jurisdiction committed to the Circuit Court.

That allocation is important and must be honored. It is not just an organizational matter but implements the different procedures and options available in the "juvenile court"—that, in delinquency cases, the proceedings are regarded as civil, rather than criminal, that there is no right of jury trial, that there is a much more therapeutic overlay requiring greater coordination with the departments of health, education, social services, and juvenile services, and that the disposition options are quite different from those available in criminal proceedings. Failure to honor this legislative allocation will ordinarily constitute reversible error, but the allocation is not truly a jurisdictional one, at least in the sense that this Court, in recent times, has come to view the concept of jurisdiction.

My second thought proceeds from the first. In allocating authority between the juvenile and criminal courts, the Legislature has committed to the criminal court the initial authority to deal with juveniles who commit certain more grievous offenses. *See* CJP § 3–8A–03(d). Unless such a case is transferred to the juvenile court pursuant to what is commonly called a "reverse waiver" (*see* Criminal Procedure Article (CP) § 4–202), the General Assembly has decided, as a general rule, that a juvenile who has allegedly committed one or more of those offenses should be treated as if he or she were an

adult and not be afforded the more beneficent procedures and options available in the juvenile court.

The obvious premise of the 2002 law that enacted CP § 4–202.2 was that (1) where a juvenile has been charged with offenses described in CJP § 3–8A–03(d)(1) or (4) that, subject to any reverse waiver, must be resolved in the criminal court,[1] as well as lesser related offenses that, subject to waiver by the juvenile court, would ordinarily be resolvable only by the juvenile court, and (2) pursuant to the mandate of §§ 3–8A–03(d)(1) and (4), those lesser related charges are also submitted to the criminal court, and (3) the § 3–8A–03(d)(1) or (4) offenses have, in some way, been resolved in the juvenile's favor and the only conviction(s) entered in the criminal court are for one or more of the lesser related offenses, the criminal court should be permitted, in its discretion, to transfer the case to the juvenile court for disposition. Although the lesser related charges have been adjudicated in the criminal court, the criminal court judge may believe that the dispositional options available only in the juvenile court would be more appropriate than those available in the criminal court.

In exercising that discretion to transfer the case for disposition, the criminal court judge must consider the five factors set forth in § 4–202.2(b). For the most part, they are the same factors that the criminal court must consider for an initial reverse waiver under CP § 4–202 and that a juvenile court must consider for waiver to a criminal court under CJP § 3–8A–06(e) and include the amenability of the child to treatment in programs available only through juvenile court disposition. It is implicit that the discretion exercised by the criminal court judge, applying those factors, should not then

---

1.  CJP § 3–8A–03(d)(1) excludes from the juvenile court a child 14 years old or older who is alleged to have committed an act which, if committed by an adult, would be a crime punishable by death or life imprisonment and all other charges arising out of the same incident. Section 3–8A–03(d)(4) excludes a child 16 years old or older who is alleged to have committed any of 17 offenses listed in that subsection, which are sex offenses or offenses involving other forms of violence or weapons, and all other charges arising out of the same incident.

be second-guessed by a juvenile court judge, even if, as here, it is the same individual. If the respondent thereafter commits further delinquent acts, which cause a juvenile court judge to conclude that the respondent is no longer amendable to treatment in the juvenile system, the judge may waive jurisdiction with respect to *those* offenses and send *that* case to the criminal court. (In this case, those subsequent charges were filed directly in the criminal court because Smith had turned 18 when they were committed).

Following the approach taken in *In re Glenn S., supra,* 293 Md. 510, 445 A.2d 1029, the Court seems to put this prohibition against second-guessing the decision of the criminal court judge on jurisdictional grounds—that the juvenile court has no jurisdiction to send the matter back to the criminal court. I prefer to view it as a matter of fairness and proper court administration—that the juvenile not be bounced back and forth like a ping pong ball in the same case. What is at issue is not really fundamental jurisdiction, which is vested in the Circuit Court, but rather its appropriate exercise.

I would hold that, once a criminal court judge, after considering the required statutory factors set forth in CJP § 4–202.2, rules that the juvenile should have the benefit of the dispositional options available in the juvenile court, that ruling must be respected and not countermanded by a judge exercising the authority of a juvenile court. The statutory authority of the criminal court judge to make that decision, after all, is based on the premise that, had the charges that kept the case out of juvenile court in the first place and that were resolved in the juvenile's favor not been made, the juvenile court would have been required to deal with disposition in any event, so nothing inappropriate has actually been imposed on the juvenile court.

Finally, and more globally, I suggest that the time may have come for a serious reexamination of whether this dual structure within a single court, beset with exceptions and waivers, continues to serve any useful purpose. The "children in need of assistance" (CINA) cases handled in juvenile court

can just as easily be dealt with in the family divisions of the Circuit Court without classifying them as "juvenile court" cases. The label, I suggest, adds little of practical value. The family divisions already deal with guardianships, adoptions, and child access cases, and the same health, education, and social services now available to the Circuit Court judges who sit as a juvenile court can be made available to the Circuit Court judges who are assigned to the family divisions, without the label of juvenile court.[2]

With respect to delinquency cases, some offenses are placed initially in the criminal court and some in the juvenile court, subject to waivers both ways. If the case is in juvenile court, the child is deprived of a right to a jury trial and, most often, the case is tried by a master rather than a judge, even though a finding of delinquency could result in a significant deprivation of liberty.[3] The posited advantages of a supposedly separate juvenile court, with these deviations, are that (1) there is a relative, but by no means complete, anonymity associated with juvenile court proceedings, which protects the child from the glare of publicity, (2) the child does not receive a criminal record if found delinquent, and (3) dispositions more appropriate to juvenile offenders are available in juvenile court. I question whether those perceived advantages require

---

**2.** At one time, a significant part of the juvenile court caseload were "children in need of supervision"—children who may have committed some minor offenses but whose real problem was that they were out of effective control by their parents. They were disobedient, they were often truant from school, they stayed out late, they were beginning to get into trouble. *See* CJP § 3–8A–01(e). That category of child— somewhat midway between the CINA and the delinquent—is now a backwater of juvenile court cases. It may be time to look more closely at it and perhaps expand it somewhat, as it could provide a better focus for services and help. I expect that the family divisions of the Circuit Courts can deal with those children at least as well as the juvenile courts once did.

**3.** It is true that, following a finding of delinquency by a master, the law permits a juvenile to have a *de novo* trial before a judge upon exceptions filed within a rather limited period of time. We do not permit that kind of procedure in criminal court, even in relatively minor misdemeanor cases.

a separate quasi-jurisdictional organizational structure, however.

Except for the fact that there is no jury in juvenile court and the adjudicator may be a master rather than a judge, the due process protections are essentially the same in both juvenile and criminal proceedings, notwithstanding that delinquency proceedings are regarded as civil rather than criminal. What is the trade-off for denying a child 17 years old the right of jury trial possessed by a child 18 years old? Certainly not anonymity. If the law permits juvenile court proceedings to be closed, or access to them limited, it can permit that degree of confidentiality as well if those cases proceeded in the criminal courts. The name "juvenile court" is not necessary to allow that kind of confidentiality.

The real, or at least perceived, value of juvenile court in delinquency cases that begin and remain, or are transferred, there are the more therapeutic dispositional options. But the law could just as easily provide those options in the criminal court, including the prospect of expungement or reclassification as a civil infraction if the juvenile successfully completes whatever program is ordered by the court. I see no reason why the criminal courts could not interface with the social service and juvenile service agencies as the juvenile courts do. We now offer special training to judges in the family divisions; similar training could be offered to judges in criminal court who would handle cases involving young offenders.

The concept of the juvenile court as a beneficent alternative to the traditional approach to the treatment of children who commit criminal offenses came about in the 1890s. It was a progressive idea then. But that was a different era. A huge part of our social structure has undergone significant change since then. The stability and even the nature and structure of families are different. The whole social dynamic facing children is different, beginning almost from birth and extending through adolescence.

We have, at least tacitly, acknowledged those facts by tinkering over the years with the role and the process of the

juvenile court—by removing whole categories of offenses from its initial reach, subject to waivers back or forth, by imposing most of the due process available in criminal court into its proceedings and thus significantly circumscribing the broad discretion of what once was termed the benevolent Star Chamber, and, in Baltimore City and most of the metropolitan counties, by committing a large role to masters rather than judges. Yet we hold firm to the 19th Century structure, with its quasi-jurisdictional but amorphous circumference, which may well be outdated. It may be time to step back and take another look, to focus more substantively on the role that the courts, in collaboration with other agencies, should play (and have the resources to play) in these cases rather than on an antique legislatively-created label, or pigeonhole, that may serve to limit useful flexibility.