989 A.2d 223

Arnold HOUGHTON

v.

Cheryl FORREST.

No. 12, Sept. Term, 2009.

Court of Appeals of Maryland.

Feb. 19, 2010.

580

**582**

William R. Phelan, Jr., Chief Solicitor (George A. Nilson, City Solicitor, and David E. Ralph, Chief Solicitor, Baltimore City Dept. of Law, Baltimore), on brief for petitioner/cross–respondent.

James L. Rhodes (Law Office of James L. Rhodes, P.A., Baltimore), on brief for respondent/cross–petitioner.

Deborah A. Jeon, Ajmel Quereshi, American Civil Liberties Union of Maryland, Baltimore, Brief of the American Civil Liberties Union of Maryland and the Public Justice Center as Amici Curiae.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

ADKINS, Judge.

Petitioner Arnold Houghton, an officer in the Baltimore City Police Department ("BCPD"), was sued for intentional and constitutional torts committed against Respondent Cheryl Forrest in the course of Houghton's duties. The case was tried in the Circuit Court for Baltimore City, where a jury found against Houghton and awarded compensatory damages to Forrest. On appeal, Houghton argued that the trial verdict should be overturned on grounds of governmental immunity. Because common law public official immunity does not apply to intentional torts, and Houghton cannot identify any other statutory basis for immunity, we will affirm the judgment of the Court of Special Appeals with respect to both immunity and the operation of the Local Government Tort Claims Act

("LGTCA"); we need not reach the malice issue, and will therefore vacate that part of the judgment below.

## FACTUAL & PROCEDURAL BACKGROUND

On the morning of May 25, 2005, Houghton observed a drug sale on North Eutaw Street in Baltimore City through a security camera feed. Three persons participated in the sale: the drug dealer, a male purchaser, and an alleged female purchaser who was wearing a white shirt or coat. As the transaction was being completed, Houghton contacted an arresting team, comprising Officer Timothy Williams and another officer, and instructed them to arrest the participants in the sale. The arresting team took the dealer and the male purchaser into custody, finding drugs on each of them, but the alleged female purchaser had left the scene. Houghton then witnessed, through the video feed, the alleged female purchaser embrace a second woman nearby. Houghton assumed that the embrace concealed the transfer or sale of drugs from the female purchaser to the second woman. This second woman was wearing a black jacket, dark jeans, and carrying a red umbrella. Houghton moved the camera back to the arrest, and in doing so, lost sight of the second woman.

After monitoring the arrest, Houghton scanned the area for the female purchaser and the second woman. The female purchaser was no longer in view, but Houghton could see someone whom he believed to be the second woman. In fact, the person in Houghton's view was Forrest, who was standing some distance away at a nearby bus stop. Forrest was wearing different colored pants and jacket than the second woman, though both were carrying red umbrellas. Houghton instructed Williams to arrest Forrest. Williams approached Forrest, and asked if she had "anything illegal" on her person; Forrest said she did not, and consented to a search of her person. The search revealed no contraband, but Houghton nonetheless instructed Williams to arrest Forrest. Williams suggested that Houghton review the video footage to make certain that Forrest was indeed the second woman. Houghton did not do so, but nonetheless confirmed that Forrest was

to be arrested. Williams handcuffed and arrested Forrest, over Forrest's protests, and placed her with the other arrestees. Forrest testified at trial that she overheard Williams discussing the possibility that he may have arrested the wrong person, and that Williams was instructed to take her into custody nonetheless. Forrest was moved to Central Booking, though she was not summoned to court and charges against her were eventually dismissed.

In December 2006, Forrest filed suit against Houghton and Williams, alleging numerous intentional torts including assault, battery, false arrest, and false imprisonment, as well as violations of Articles 24 and 26 of the Maryland Declaration of Rights. At trial in the Circuit Court for Baltimore City, a jury found that Williams was immune from liability, but that Houghton had acted with malice (and therefore that immunity did not apply), and that Houghton was liable on almost all counts. The jury awarded $171.60 in actual damages, $180,000.00 in compensatory damages, and no punitive damages.

Houghton appealed the verdict on the grounds that there was insufficient evidence in the trial court to support a finding of malice, and that he was thus immune from liability. *See Houghton v. Forrest*, 183 Md.App. 15, 21–22, 959 A.2d 816, 819–20 (2008). Forrest responded that the evidence was sufficient, and alternatively, that the trial court erred in requiring a finding of actual malice because public official immunity does not apply to intentional torts. *Id.* On appeal, the Court of Special Appeals held that:

(1) common law public official immunity does not apply to intentional torts, and there are no other applicable bases for immunity, and

(2) the evidence at trial was insufficient to support a finding of malice.

*Id.* The Court of Special Appeals further held that the insufficient evidence on malice was not a bar to Forrest's recovery, as the LGTCA allows Forrest to enforce her claim against the Baltimore City Police Department. Houghton

appeals the first holding, and Forrest cross-appeals on the second holding.

## DISCUSSION

We must resolve two issues in order to completely address this case: first, whether Houghton is immune from liability on either statutory or common law grounds; second, how the operation of the LGTCA affects the application of the judgment against Houghton. We discuss each issue in turn.

### Immunity

Houghton did not make clear in the proceedings below what particular source of immunity he relies upon for his claim. In his briefs to this Court, and during oral argument, Houghton focused primarily on the application of common law public official immunity. We will address this issue below. In addition, because official immunity may derive from any one of several provisions in the Maryland code, we will examine all other possible sources for Houghton's immunity as well.

### Common Law Public Official Immunity

Houghton claims immunity from judgment under a common law theory of public official immunity. Common law public official immunity is reserved for public officials (as opposed to mere employees) who perform negligent acts during the course of their discretionary (as opposed to ministerial) duties. *See James v. Prince George's County,* 288 Md. 315, 323, 418 A.2d 1173, 1178 (1980). We have held that police officers are public officials. *Smith v. Danielczyk,* 400 Md. 98, 128–29, 928 A.2d 795, 813 (2007). Moreover, there is no question that Houghton's arrest of Forrest was a discretionary act, and not a ministerial one: we have long held that the word " 'discretion' denotes freedom to act according to one's judgment in the absence of a hard and fast rule." *Schneider v. Hawkins,* 179 Md. 21, 25, 16 A.2d 861, 864 (1940). The order to arrest an individual falls squarely within that definition. So, both criteria that this Court set forth in *James* are met here.

For more than twenty years, however, this Court has held that common law public official immunity does not apply to intentional torts.[1] *See Lee v. Cline*, 384 Md. 245, 258, 863 A.2d 297, 305 (2004) ("The Maryland public official immunity doctrine is quite limited and is generally applicable only in negligence actions or defamation actions based on allegedly negligent conduct."); *Cox v. Prince George's County*, 296 Md. 162, 169, 460 A.2d 1038, 1041 (1983) ("a police officer does not enjoy this [public official] immunity if he commits an intentional tort").[2] In spite of these holdings, Houghton asks us to apply this immunity to officials committing intentional torts. But this Court will not overturn precedent in a vacuum, nor do so on a whim. *See, e.g., Townsend v. Bethlehem–Fairfield Shipyard, Inc.*, 186 Md. 406, 417, 47 A.2d 365, 370 (1946) ("[I]t is a well recognized and valuable doctrine that decisions, once made . . . should not thereafter be lightly disturbed or set aside. . . . ").

Our "institutional devotion to stare decisis is not absolute," *State v. Adams*, 406 Md. 240, 259, 958 A.2d 295, 307 (2008), but we nonetheless remain deeply respectful of the doctrine. Adherence to stare decisis is our "preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *Livesay v. Balt. County*, 384 Md. 1, 14, 862 A.2d 33, 40–41 (2004) (*quoting Payne v.*

---

1. The trial court also found that Houghton had committed constitutional torts against Forrest, but Houghton does not argue that common law public official immunity would apply to such acts.

2. *See also Lovelace v. Anderson*, 366 Md. 690, 705, 785 A.2d 726, 734 (2001) ("[T]he defense of public official immunity generally applies only to negligent acts."); *DiPino v. Davis*, 354 Md. 18, 49, 729 A.2d 354, 370 (1999) ("[Public official immunity] principles apply to negligent conduct, not to intentional conduct."); *Ashton v. Brown*, 339 Md. 70, 117, 660 A.2d 447, 470 (1995) ("[Plaintiff's claims include] several so-called intentional torts. Public official immunity is not a defense to these intentional torts."); *Clea v. Mayor of Balt.*, 312 Md. 662, 673, 541 A.2d 1303, 1308 (1988) (*citing Cox v. Prince George's County*, 296 Md. 162, 169, 460 A.2d 1038, 1041 (1983)).

*Tennessee,* 501 U.S. 808, 827, 111 S.Ct. 2597, 2609, 115 L.Ed.2d 720 (1991)). Only a fundamental change in factual or legal circumstances will justify departing from this principle. If the state of the law as a whole has evolved, for example, so as to render a rule nothing more than "a remnant of [an] abandoned doctrine," then we would be justified in correspondingly abandoning that rule. *See Planned Parenthood of Se. Pa. v. Casey,* 505 U.S. 833, 854–55, 112 S.Ct. 2791, 2808, 120 L.Ed.2d 674 (1992) (joint op.). Alternately, if our understanding of the factual underpinnings of a rule has changed unto the point where the rule is no longer justified by the status quo, then there is no reason to adhere to the rule obstinately. *See id.* at 860, 112 S.Ct. at 2811–12 (discussing the relationship between factual divergence and stare decisis). Likewise, if experience demonstrates that it is unrealistic or unwise to enforce a rule in the form expressed by this Court, then it may be modified for practical reasons. *Id.* at 854–55, 112 S.Ct. at 2808.

■ Here, Houghton has shown us no reason to deviate from our rule denying common-law immunity to public officials who commit intentional torts. Houghton has not presented any evidence, either in his brief or at oral argument, that the factual or legal landscape with regard to public official immunity has changed unto the point where we would be justified in departing from our precedents. Houghton advances a general policy argument, relying on language in *Lee,* where we stated that public official immunity is "intended to be a defense against claims that a 'better choice' could have been made by an official." 384 Md. at 261, 863 A.2d at 307. This is an accurate restatement of the purposes behind the public official immunity doctrine, but it does not support Houghton's position. Indeed, our very next sentence in *Lee* states that "[t]his defense is inherently related to actions based on negligence." *Id.* We have not deviated from this principle throughout our cases addressing public official immunity. *See, e.g., Lee,* 384 Md. at 258, 863 A.2d at 305; *DiPino v. Davis,* 354 Md. 18, 49, 729 A.2d 354, 370 (1999) ("[A] police officer, who might other-

wise have the benefit of this immunity, does not enjoy it if the officer commits an intentional tort . . . . ").

 Houghton's actions are therefore not of the type that we have intended to protect through application of common law public official immunity. As Houghton has provided no other reason for us to overrule our precedents, we affirm our previous holdings that common law public official immunity does not apply to intentional torts other than defamation. Houghton thus cannot claim such immunity in defense of the judgment against him.

### Municipal Official Immunity and the Maryland Tort Claims Act

 Maryland public officials may also claim immunity for their official acts on statutory grounds. Under Courts & Judicial Proceedings Article ("CJ") Section 5–507(b), officials of municipal corporations are entitled to limited immunity. *See* Md.Code (2006 Repl.Vol.), § 5–507 of the Courts & Judicial Proceedings Article. Likewise, certain public officials can claim immunity under the Maryland Tort Claims Act ("MTCA"), which defines the State's limited waiver of sovereign immunity with respect to tort suits against public officials. *See* Md.Code (2004 Repl.Vol.), § § 12–101 to –10 of the State Government Article ("SG") (the Maryland Tort Claims Act). As the Court of Special Appeals correctly held, neither of these statutes applies in this case.

 First, municipal official immunity under CJ Section 5–507(b) does not apply because the BCPD was created as a state agency, through an act of the General Assembly, and not as a municipal agency. *See* 1867 Md. Laws 761–74 (establishing the BCPD and defining its duties); *see also Mayor & City Council of Balt. v. Clark,* 404 Md. 13, 28, 944 A.2d 1122, 1131 (2008) (holding that "notwithstanding the Mayor's role in appointing and removing the City's Police Commissioner, the Baltimore City Police Department is a state agency."). Since that time, "this Court has consistently held that Baltimore City should not be regarded as the

employer of members of the [BCPD] for purposes of tort liability." *Clea v. Mayor of Balt.*, 312 Md. 662, 668, 541 A.2d 1303, 1306 (1988). Thus, for the purposes of tort liability, Houghton is an employee of a state agency and not a municipal agency. He therefore cannot claim to be a municipal official, and cannot claim municipal official immunity.

■ Second, Houghton cannot claim immunity under the MTCA because although the BCPD is a state agency, city police are not defined as state personnel for the purposes of the MTCA. *See* SG § 12–101(a) (enumerating classes of officials within the scope of the MTCA). This is no mere oversight: the General Assembly amended the statute after our decision in *Clea,* where we discussed in dicta the possibility that the state might be liable for a BCPD officer's tortious conduct because the BCPD is a state agency. *See Clea,* 312 Md. at 671 n. 6, 541 A.2d at 1307 n. 6. Shortly thereafter, the General Assembly enacted House Bill 364, for "the purpose of altering the definition of State personnel [under the MTCA]." *See* H.B. 364, 1989 Gen. Assem., 406th Sess. (Md.1989). The newly modified statute helped clarify that the bounds of immunity and liability under the MTCA applied only to individuals directly paid by or otherwise under direct control of the state itself. *See id.; see also State v. Meade,* 101 Md.App. 512, 522–24, 647 A.2d 830, 834–36 (1994) (discussing history of the 1989 amendment).

■ The state thus reaffirmed the preservation of its sovereign immunity for acts committed by municipal police, including members of the BCPD.[3] *See Balt. Police Dep't v. Cherkes,* 140 Md.App. 282, 313–14, 780 A.2d 410, 428–29 (2001)

---

3. This excepts officers who are designated as sheriffs or deputy sheriffs; these are expressly covered by the Maryland Tort Claims Act ("MTCA"). Md.Code (2004 Repl.Vol.), § 12–101(a)(6) of the State Government Article ("SG"). The explicit mention of these types of officers bolsters the argument that other officers are excluded, per traditional canons of statutory construction. *See, e.g., Comptroller of the Treasury v. Blanton,* 390 Md. 528, 537, 890 A.2d 279, 285 (2006) ("Maryland has long accepted the doctrine of *expressio (or inclusio) unius est exclusio alterius,* or the expression of one thing is the exclusion of another.").

(discussing the amendment process). In doing so, however, it also necessarily excluded municipal police, including Houghton, from the scope of the MTCA. As Houghton is a municipal police officer, the MTCA neither defines his responsibilities nor denies him protections with respect to immunity. The statute is simply inapplicable to Houghton's situation, and he cannot seek shelter beneath it.

### "Governmental Official" Immunity

The final statutory basis for immunity that could be applicable in this case derives from CJ Section 5-511(b), which creates immunity for officials "of a governmental entity...." *See* CJ § 5-511. The code defines "governmental entity" as follows:

(b) *Governmental entity.*—"Governmental entity" means a special taxing district which:

(1) Is a unit of government responsible for an area situated solely within a single county;

(2) Has a governing body elected independently of the county government;

(3) Is financed with revenues secured in whole or in part from special taxes or assessments levied on real property situated within the area;

(4) Performs municipal services for the residents of the area; and

(5) Was not created for a limited or special purpose or purposes.

Md.Code (2005 Repl.Vol.), Article 26, § 1(b). The same Section defines an official of a governmental entity as "a member of the governing body of a governmental entity." *Id.* at § 1(c).

We agree with the Court of Special Appeals that the immunity defined in these provisions is inapplicable to Houghton. In this case, we need not investigate the legislative history of the statutory provision, as a plain reading of the statute resolves our questions. As we said in *Smith v. State,* 399 Md. 565, 924 A.2d 1175 (2007), "[o]ur goal, when interpret-

ing statutes, is to identify and effectuate the legislative intent underlying the statute(s) at issue. The best source of legislative intent is the statute's plain language, and when the language is clear and unambiguous, our inquiry ordinarily ends there." *Smith,* 399 Md. at 578, 924 A.2d at 1182 (citations and quotation marks omitted).

Here, we cannot reasonably construe the statute's plain language to cover either Houghton or the BCPD. Section 1(b) states that a "governmental entity" must at the very least be a "special taxing district...." A special taxing district is an area designated by a municipality in which a special tax is levied, through a grant of authority from the General Assembly, in order to fund specific public works and construction projects. *See* Md.Code (2005 Repl.Vol.), Article 23A, § 44(a); *see also* MARK M. VIANI, MARYLAND LOCAL GOVERNMENT LAW AND STRUCTURE 3–34 (1999) ("A special tax district is a district created to derive additional revenue from the taxpayers within the district."). This cannot possibly be said of the BCPD, which thus is not a "governmental entity" for the purposes of CJ Section 5–511(b). This statutory immunity thus cannot apply in this case.[4]

### Malice & The Local Government Tort Claims Act

■■■ On cross-appeal, Forrest argues that the Court of Special Appeals erred in holding that there was insufficient evidence to support a finding that Houghton acted with malice. *See Houghton,* 183 Md.App. at 26–30, 959 A.2d at 822–25. We hold that because of the operation of the Local Government Tort Claims Act, there is no need for this Court to reach the malice issue. *See* CJ §§ 5–301 to –99.

The LGTCA limits liability, provides for indemnification, and establishes procedural requirements relating to suits against officials of local government authorities. It expressly

---

4. Indeed, even if we were to construe the statute so broadly as to somehow encompass the BCPD, Houghton would still have no recourse under this provision, as there is no indication that he is "a member of the governing body" of the BCPD, as required by Article 26, Section 1(c).

applies to suits against employees of the BCPD. *See* CJ § 5–301(d)(21) (defining the BCPD as "[l]ocal government" for the purposes of the act). In this case, it ensures that the BCPD will be liable for the judgment against Houghton. The LGTCA states in part that, except with respect to punitive damages, "a local government shall be liable for any judgment against its employee for damages resulting from tortious acts" within the employee's scope of employment. CJ § 5–303(b)(1). We have previously held that the test for determining whether acts were within the scope of employment is whether the challenged acts were in furtherance of the employer's business and could be fairly termed "incident to the performance of duties entrusted to" the employee. *See Ennis v. Crenca*, 322 Md. 285, 293–94, 587 A.2d 485, 489–90 (1991). That is surely the case here, as Houghton's arrest of Forrest was incident to his general authority as a police officer. His actions would therefore be within the scope of his employment regardless.

The LGTCA thus ensures that the BCPD is liable for the judgment against Houghton.[5] During oral argument counsel for Forrest stated that his client sought only to obtain a judgment collectable against BCPD. Once we have made this determination, Forrest's claim has been adjudicated. Although Section 5–302 of the LGTCA allows the BCPD to seek indemnification from Houghton if he acted with malice, the legal relationship between Houghton and the BCPD is not at issue in this case. *See* CJ § 5–302(b)(2). We therefore need not determine it; if the BCPD elects to pursue Houghton for indemnification at a later date, an assessment of Houghton's malice or lack thereof can be addressed during those proceedings.

---

**5.** Subject to a $200,000 cap on compensatory damages per claim, and a $500,000 cap on compensatory damages for all claims arising from a single occurrence. *See* CJ § 5–303(a)(1). This limitation is not relevant here, as Forrest's total damages award in the trial court was $181,171.60.

## CONCLUSION

We hold that Houghton cannot claim immunity for his intentional torts against Forrest because common law public official immunity does not apply to the commission of those torts. Nor is there any statutory source of immunity that would protect Houghton's actions. We also hold that there is no reason to determine if Houghton acted with malice, as the BCPD is liable for the judgment against Houghton regardless. Forrest is thus entitled to collect her judgment directly from the BCPD. Accordingly, we affirm the judgment of the Court of Special Appeals with respect to the immunity issue, and vacate the judgment of the Court of Special Appeals with respect to the malice issue.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED IN PART AND VACATED IN PART. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE PETITIONER.**