SULLIVAN, ET AL. *v.* COSTANZA

[No. 430, September Term, 1969.]

*Decided July 9, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Ronald L. Lapides* for appellants.

*John B. Howard,* with whom were *Cook, Mudd, Murray & Howard* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court.

This appeal questions the propriety of Judge Maguire's action in the Circuit Court for Baltimore County in directing a verdict for the appellee-defendant after concluding the appellant-plaintiff [1] was guilty of contributory negligence as a matter of law.

The relevant facts begin with a four car accident on the morning of May 10, 1968, which blocked the intersection of Pulaski Highway (Route 40) and Chesaco Avenue. Pulaski Highway in this general area has four lanes, two for traffic traveling west and two for eastbound traffic. David Costanza, appellee, on his way to work, was proceeding west on Pulaski in the slow or outside traffic lane but was forced to stop because traffic in both lanes was backed up for one half mile. Thereafter traffic in both lanes behind him also came to a standstill. Costanza states that he decided to telephone his office concerning his travel difficulty. Upon observing an outside telephone booth about twenty feet to his rear on a nearby business property, but without looking any further to his rear appellee attempted to drive to his right out of his lane of traffic across the shoulder to make the call. He had moved but a short distance onto the shoulder when his automobile was sideswiped by a large tow truck owned and operated by appellant Wayne Sullivan. Sullivan, who owned a garage and whose tow truck was licensed by Baltimore

---

1. Actually there are two plaintiffs, Wayne Sullivan and his wife Patricia Sullivan, but since Mrs. Sullivan joins in this suit solely to assert a claim for loss of consortium, Wayne Sullivan is referred to as though he were the only plaintiff-appellant.

County, had been called by the Baltimore County police to remove the four damaged vehicles blocking the intersection of Pulaski and Chesaco. With the maximum speed limit on Pulaski Highway being fifty-five miles per hour he proceeded at a speed of approximately forty-five in a westerly direction on that road in the far right lane. Observing halted traffic ahead blocking both westbound lanes he reduced his speed and pulled his tow truck onto the highway's right shoulder. Sullivan proceeded at twenty miles per hour along this shoulder which was paved and of varying width. He passed the halted traffic to its right until halted himself by the collision with the Costanza vehicle.

Appellant's truck was equipped with "emergency lights on the front and to the rear, a beacon light on the top, and a large air horn for emergency cases." He testified "the emergency lights, including the beacon light were turned on when he left his garage and were operating at the time of the accident." He agrees, however, that at no time did he sound his "loud air horn." Additional facts will be added where appropriate during the course of this opinion.

Code (1957, 1967 Repl. Vol.), Article 66½, section 2 (a) (1) defines authorized emergency vehicles as follows:

> "Vehicles of the fire department, salvage department, police vehicles, and such ambulances and emergency vehicles of municipal departments or public service corporations as are designated or authorized by the commissioner or the chief of police of an incorporated city."

Article 66½, section 214 allows an authorized emergency vehicle under specified conditions to proceed contrary to the mandate of rules of the road. This section reads:

> "The prima facie speed limitations and provisions relative to right-of-way stopping at through highways, *rules of the road*, traffic-control devices and signals set forth in this article

shall not apply to authorized emergency vehicles when responding to emergency calls *and the drivers thereof sound audible signal by bell, siren, or exhaust whistle. . ."* (emphasis added).

With the parties apparently in agreement, Judge Maguire as a matter of law determined the tow truck was an authorized emergency vehicle as defined in section 2 (a) (1). However, assuming this to be true, we can not agree with the trial judge's conclusion that the operator of an authorized emergency vehicle was required by section 214 to sound his "bell, siren, or exhaust whistle" and that Sullivan's conceded failure to do so constituted contributory negligence as a matter of law.[2] We do not read section 214 as requiring this result. Clearly the section does not make it unlawful for an authorized emergency vehicle to proceed on a highway, even on an emergency mission, without audible signal by "bell, siren, or exhaust whistle." We hold the failure to sound the audible signal merely strips the authorized vehicle of its privilege to proceed without regard to speed limitations, right of way provisions, traffic control devices and other rules of the road. Stated another way, failure to sound the audible bell, siren or exhaust whistle does not make driving an authorized emergency vehicle on a highway illegal, it merely results in a requirement that such vehicle be operated in accordance with all appropriate rules of the road, the same as any private or conventional vehicle.

Appellee further argues that even though appellant operated his tow truck as an emergency vehicle stripped of its exemptions and therefore proceeded as a private vehicle, his driving actions still make him guilty of contributory negligence as a matter of law because of the provisions of Article 66½, section 220 (b). Generally, one may pass only to the left of a vehicle he overtakes, but section 220 provides a vehicle may overtake and pass to the right of another vehicle when (a) the other vehicle

2. The trial judge did not reach and neither do we the question of whether appellee's description as to the manner he operated his vehicle constitutes primary negligence as a matter of law.

is making a left turn, (b) within a business or residential district (where passing on the right or left is permitted) if there is unobstructed pavement of sufficient width for four or more lanes of moving traffic, or (c) upon one-way streets or roadways on which traffic is restricted to one direction or movement and of sufficient width for two or more lines of moving vehicles. Subsection (b) has the additional provision "[n]o person shall drive off the pavement or upon the shoulder of the roadway in overtaking or passing on the right." This restriction is a part of the subsection applicable only to business or residential districts. Section 2 (3) of Article 66½ defines a business district as "the territory contiguous to and including a highway when 50 percent or more of the frontage thereon for a distance of 300 feet or more is occupied by *building in use for business*" (emphasis supplied). A residential district is defined by section 2 (43) : "The territory contiguous to and including a highway not comprising a business district when the property on such highway for a distance of 300 feet or more is in the main improved with residences or residences and buildings in use for business."

Even though there is testimony to the effect that a number of business establishments are in the area and at least one unoccupied building formerly used as a motel, there is no evidence which will permit the conclusion as a matter of law that the accident happened in a business district meeting the precise statutory definition. There is no evidence tending to indicate the existence of any residences. Likewise, even though Pulaski is shown to be a four lane highway there is no testimony as to markings or signs, if any, controlling the movement of traffic nor is there any testimony undertaking to give a precise description of the highway. Appellant suggests in his brief that the Pulaski Highway is a dual lane road with two lanes carrying traffic in each direction separated by a median grass strip. Thus he intimates the two lanes accommodating traffic flowing in a westerly direction comprise a one-way street or highway as defined in section 220 (c) per-

mitting passing to the right. A careful reading of all the testimony, however, does not disclose any evidence supporting the existence of such a grass median strip between the two inside lanes. It would appear that the legal right of appellant to proceed as he did along the shoulder of Pulaski Highway and to the right of vehicles stopped on the highway may be controlled by any one or more of several statutory rules of the road. The correct answer will depend upon the type of highway, presence of authorized traffic control signs, and the nature of the adjoining area. Among these statutory rules are Article 66½, section 220 (b) and (c) governing when overtaking and passing to the right is permitted, and Article 66½, section 217, particularly subsection (b) which, prior to its amendment in 1969, required a vehicle under some circumstances to proceed along the shoulder of the highway.[3]

Having concluded, therefore, that the trial court was in error in granting the motion for directed verdict on the evidence as it then existed, the judgment will be reversed and the case remanded for a new trial.

> *Judgment reversed. Case remanded for a new trial. Costs to be paid by the appellee.*

---

3. The 1969 amendment eliminated the requirement that slow speed vehicles travel on the shoulder if one were available. Since this accident happened prior to the amendment, the law in effect at the time of the accident controls. *Rogers v. Frush*, 257 Md. 233, 262 A. 2d 549 (1970).