968 A.2d 630

PRINCE GEORGE'S COUNTY, Maryland, et al.

v.

Cleveland BRENT.

No. 2610, Sept. Term, 2007.

Court of Special Appeals of Maryland.

March 27, 2009.

---

Rajesh A. Kumar (Stephanie P. Anderson, County Atty., Mary C. Crawford, Deputy County Atty., on the brief), Upper Marlboro, for Appellant.

Richard L. Jaklitsch, Upper Marlboro, for Appellee.

Panel: HOLLANDER, WRIGHT and JOHN F. McAULIFFE (Retired, Specially Assigned), JJ.

JOHN F. McAULIFFE, Judge (Retired, Specially Assigned).

From what might have been a rather routine action for damages arising out of a motor vehicle accident, there has sprung four years of litigation, two jury trials, two appeals to this Court, and a residuum of questions concerning sufficiency of evidence, statutory interpretation, and public official immunity.

## THE FACTS

On December 10, 2002, a Prince George's County police cruiser operated by Officer Michael Daily entered an intersection on a red signal and struck a vehicle operated by appellee, Cleveland Brent (hereinafter, "appellee" or "Brent"). Appellee sued Prince George's County ("the County") for damages and received a jury verdict for $320,000. The County filed a Motion for Judgment Notwithstanding the Verdict or, in the alternative for a remittitur, contending that the County enjoyed immunity for all sums above its existing motor vehicle insurance limits, in accordance with the statutory cap established by Maryland Code (1973, 2006 Repl.Vol.), § 5–524 of the Courts and Judicial Proceedings Article ("CJ").[1]  Appellee then filed a second amended complaint to add Officer Daily as a defendant. The County filed a motion to dismiss that complaint. After a hearing, the court granted the County's motion, reduced the damage award recoverable against the County to $20,000, pursuant to the provisions of § 5–524, and dismissed appellee's second amended complaint, with prejudice.

Appellee appealed to this Court, contending that the circuit court should not have dismissed the second amended com-

---

1. Hereinafter, unless otherwise specified, references to Code sections will be to the Courts and Judicial Proceedings Article.

plaint or, in any event, that the dismissal should not have been with prejudice. In an unreported opinion, the panel held that the circuit court neither erred nor abused its discretion in granting the motion to dismiss, but vacated the order and remanded the case with direction to enter a judgment of dismissal that was without prejudice to Brent's right to file a separate cause of action against Officer Daily.

The panel explained that the trial judge had made it clear that he intended only to foreclose permanently the right of the plaintiff to amend the action that had been tried, and not to preclude the plaintiff from pursuing a separate action against Officer Daily. The opinion concluded with this sentence: "We caution the parties that, by our disposition of this appeal, we do not intimate any view whatsoever of what should be the proper outcome of [Brent's] lawsuit against Officer Daily."

After appellee filed this action against Officer Daily, the County assumed the defense of its employee pursuant to the Local Government Tort Claims Act ("LGTCA"), CJ § 5–301 *et seq.* The County filed motions for summary judgment alleging that the action was barred by res judicata and collateral estoppel, and on the alternative grounds that: 1) Officer Daily was immune from liability as the operator of an emergency vehicle in the performance of emergency service, § 5–639(b)(1) or, 2) that any verdict against Officer Daily would be capped at $20,000, pursuant to §§ 5–507(b)(2) and 5–511(c), and that an award of $20,000 would be a duplication of the $20,000 judgment already entered against the County after the first trial.

The trial court determined that the question of "emergency service" should be decided first, because § 5–639 would provide complete immunity to Officer Daily if the trier of fact determined that he was operating an emergency vehicle in the performance of emergency service. Section 5–639(b)(1) provides:

> An operator of an emergency vehicle, who is authorized to operate the emergency vehicle by its owner or lessee, is immune from suit in the operator's individual capacity for damages resulting from a negligent act or omission while

operating the emergency vehicle in the performance of emergency service.[2]

The trial court also held that the findings of the first jury as to negligence, absence of contributory negligence, and damages were binding by virtue of principles of res judicata or collateral estoppel, so that the sole issue to be tried was the question of "emergency service." The court reasoned that if it were determined that the officer was not operating the motor vehicle in emergency service, the further questions raised by the County concerning possible immunity under §§ 5–507 and 5–511 could be resolved by the court following the verdict. The parties agreed that if the additional claimed immunity was not available to the officer, the award would in any event be capped at $200,000 pursuant to § 5–303(a) of the LGTCA. A jury was empaneled to decide the question of "emergency service" and found that Officer Daily was *not* operating the vehicle in the performance of emergency service at the time of the accident.

Following the verdict, the trial judge conducted a hearing on the County's claim that even though Officer Daily was not entitled to complete immunity as the operator of an emergency vehicle in emergency service, he was entitled to qualified immunity for any amount above the existing motor vehicle insurance limit, pursuant to either § 5–507(b)(2) or § 5–511(c). The trial judge held that Officer Daily, and therefore the County, was not entitled to the immunity claimed, but that the limit of $200,000 imposed by the LGTCA applied. Deducting the $20,000 already paid as a result of the judgment obtained against the County in the first action, the court directed that final judgment be entered in the amount of $180,000, and it is from that judgment that the County and Officer Daily have appealed.

Appellants' principal contentions are:

---

2.  Section 5–639(b)(2) provides that this immunity does not apply when an operator is guilty of a malicious act or omission, or gross negligence. No contention was made that this subsection had any application to the facts of this case.

1. That the second action was barred because it split a single cause of action, or was otherwise barred by principles of res judicata and collateral estoppel;

2. That the trial judge erred at the second trial by failing to grant appellant's Motion for Judgment because the evidence conclusively established that Officer Daily was operating his vehicle in emergency service; and,

3. That the trial judge erred at the second trial by failing to grant That the trial court erred in finding that §§ 5–507(b)(2) and 5–511(c) did not apply to afford Officer Daily immunity as to any amount in excess of the County's existing motor vehicle insurance limit.

## *DISCUSSION*

### I.

### Was the Action Barred?

Appellants contend that appellee's action against Officer Daily, brought after appellee's action against the County, should have been barred because it amounted to an impermissible splitting of a cause of action, or otherwise because of principles of res judicata or collateral estoppel. Appellants cite *Ex parte Carlin*, 212 Md. 526, 129 A.2d 827 (1957), in support of their contention:

It is well established that a single cause of action or an entire claim cannot be split up or divided and separate suits maintained for the various parts thereof. A judgment or decree in a suit for a part only of a single cause of action or entire claim permits *res judicata* to be successfully relied on if the remainder is sued on later. The rule is intended to prevent multiplicity of litigation and to avoid the vexation, costs and expenses incident to more than one suit on the same cause of action. Its bases are the maxims that it is the interest of the State, there should be an end to litigation and that no man should be twice sued for the same cause.

*Id.* at 532–33, 129 A.2d 827 (internal quotations omitted); *accord Jones v. Speed*, 320 Md. 249, 257–58, 577 A.2d 64 (1990).

The critical point to be made here is that there was but one cause of action in this matter—a claim for damages caused by negligence. It was brought against the County, and its success depended on the proof of an actionable claim against the driver of the County's vehicle, who was operating the vehicle in the course of his employment. Every fact necessary for the adjudication of that action for negligence was litigated in a single action. Questions of negligence, contributory negligence, causation, damages and vicarious liability were fully litigated. Appellee was barred by principles of res judicata and collateral estoppel as to each issue litigated, and could not have subjected Officer Daily to another trial if unsuccessful on any of those issues. The sole reason for the second action, which the plaintiff had unsuccessfully attempted to include in the first action after the verdict, did not involve the cause of action for negligence—rather, it involved a question of immunity that would affect the amount of the judgment that the plaintiff could recover. The question of whether Officer Daily was operating the motor vehicle in emergency service might have been litigated as a subsequent issue following the resolution of the negligence action, but the County opposed the plaintiff's attempt to do so.[3] The cause of action for negligence was not split, and any multiplicity of proceedings was due to the need to determine separate issues of immunity. Principles of res judicata and collateral estoppel were certainly applicable in this case but, as the County conceded during the second action, they operated to foreclose relitigation of the underlying cause of action.

## II

### Sufficiency of the Evidence

At the second trial, in addition to his own testimony, appellee presented evidence from four witnesses: two eyewit-

---

**3.** The County also successfully objected to including this issue for decision by the jury charged with the adjudication of the negligence action.

nesses to the accident; a representative of the State Highway Department to describe the scene, fix certain distances and describe the cycle of the traffic lights; and, Officer Daily as an adverse party. Appellants presented no other witnesses. The testimony disclosed that the accident happened on Allentown Road at the intersection of an off ramp from Branch Avenue. Officer Daily was proceeding in an easterly direction on Allentown Road, and struck appellee's vehicle as it was entering Allentown Road, causing appellee's vehicle to be spun around. The evidence was uncontradicted that appellee was entering the intersection on a green light and that Officer Daily had proceeded through a red light. The accident happened at 4:48 p.m. on December 10, 2002, at "dusk" when many vehicles did not have headlights on.

Appellee testified he never heard a siren or horn before the accident, and did not see any flashing or emergency lights before the accident. He further testified that emergency lights on the cruiser were not turned on until several minutes after the accident.

Mary Reese testified that she was a passenger in a vehicle proceeding east on Allentown Road when her vehicle was required to stop in obedience to a traffic light at an intersection that was just west of the intersection where the accident occurred. She said her vehicle was first in line at the red light, in the middle lane, when she heard a siren or bull horn from a police cruiser that was immediately behind her vehicle. She said she did not observe any emergency lights on the police cruiser when she first saw it. She said a vehicle next to her on the inside lane then pulled forward in response to gestures from the officer, and the police cruiser pulled around them and proceeded forward. She said she did not hear the siren or horn again or see emergency lights as the police cruiser continued on Allentown Road and, she did see the cruiser hit a vehicle entering Allentown Road at Branch Avenue.

Lawanda Reese testified that she was the driver of the vehicle in which Mary Reese was a passenger. She confirmed

that her vehicle was first in line at the traffic light when she heard a horn behind her. When she looked, she saw emergency lights on the vehicle behind her, and observed the vehicle next to her move ahead to allow the police cruiser to pass through the intersection. She said the lights and horn or siren were turned off when the cruiser was about one-half way through her intersection, after which she saw the police cruiser hit and spin a vehicle entering at the next intersection.

Officer Daily testified that at the time of the accident he was responding to a priority one call for a man with a gun, using his lights, siren and air horn. He said he received the radio call when he was at Allentown Road and Temple Hills Road, approximately two miles from the scene of the accident, and that he traveled that distance in 10 to 12 minutes. Through Officer Daily, appellee introduced a "CAD note," described as a computer read out of the entries made concerning any dispatched call. The CAD note showed that as a result of a call received at 3:56 p.m., Officer 2608 was dispatched at 4:00 p.m. for a "check weapons" call.[1] Officer 2608 was not Officer Daily. The report disclosed that the officer who received the call arrived on the scene twenty minutes after it was dispatched and cleared the call at 5:24 p.m. In a block for the entry of numbers of any assisting officers, the entry was "00," indicating that no other officer was dispatched to assist.

From this evidence, appellee argued that Officer Daily was not responding to an emergency some forty-eight minutes after the call was first dispatched, and that from all the evidence the jury could find that the officer briefly activated his emergency equipment simply to pass through an intersection during rush hour traffic, and was not displaying lights, sounding an audible signal, or responding to an emergency when the accident occurred.

---

4. Officer Daily testified that the original call was for "a person in the wood line with a gun."

This evidence was sufficient to sustain the jury's finding that Officer Daily was not "in the performance of emergency service" when the accident occurred.

## III.

### Additional Claims of Immunity

As noted above, the County was granted qualified immunity pursuant to the provisions of § 5–524, thereby reducing the amount directly recoverable from the County to $20,000. With respect to any additional amount recoverable by virtue of the findings of the jury at the second trial, the parties are in agreement that, in the absence of any other valid immunity defense available to Officer Daily, the recovery will be limited by the cap of $200,000 imposed by the LGTCA, CJ § 5–303(a)(1), reduced by the $20,000 previously paid. We turn then to the question of whether any additional common law or statutory immunity exists that would defeat the claim of appellee to the $180,000 judgment entered by the trial court.

It is clear that a common law immunity exists to completely shield a public official acting within the scope of his official duties in the performance of a discretionary act that is not intentional, or a constitutional tort, or committed with actual malice. *Houghton v. Forrest,* 183 Md.App. 15, 33–34, 959 A.2d 816 (2008); *James v. Prince George's County,* 288 Md. 315, 323, 418 A.2d 1173 (1980). Officer Daily was a public official within the meaning of this common law immunity, and he was acting within the course and scope of his official duties at the time of the accident. He is not, however, entitled to common law public official immunity because in the operation of a motor vehicle under the circumstances of this case he was performing a *ministerial* act and not a *discretionary* act. *Ashburn v. Anne Arundel County,* 306 Md. 617, 623–24, 510 A.2d 1078 (1986); *James,* 288 Md. at 325–30, 418 A.2d 1173; *Schneider v. Hawkins,* 179 Md. 21, 25, 16 A.2d 861 (1940).

Appellants' argument is that a statutory immunity in favor of Officer Daily applies, and that pursuant to § 5–303(e) it can assert that defense. Section 5–303(e) provides:

(e) *Defenses available to government.*—A local government may assert on its own behalf any common law or statutory defense or immunity in existence as of June 30, 1987, and possessed by its employee for whose tortious act or omission the claim against the local government is premised and a local government may only be held liable to the extent that a judgment could have been rendered against such an employee under this subtitle.

The specific immunity the County claims on behalf of its employee is said to arise from §§ 5–507(b)(2) and 5–511(c). Those provisions, which immediately follow a section or subsection codifying the common law immunity of public officials, provide as follows:

An official of a municipal corporation is not immune from liability for negligence or any other tort arising from the operation of a motor vehicle except as to any claim for damages in excess of the limits of any applicable policy of motor vehicle liability insurance.

Section 5–507(b)(2).

An official of a governmental entity is not immune from liability for negligence or any other tort arising from the operation of a motor vehicle except as to any claim for damages in excess of the limits of any applicable policy of motor vehicle liability insurance.

Section 5–511(c).

The County introduced a certificate of self insurance showing that during the period in question, the County had been granted approval as a self-insurer pursuant to Transportation Article, § 17–103, and that the limit of liability for a single injury was $20,000.

The flaw in appellants' argument is that § 5–507(b)(1) applies only to "municipal corporations" and § 5–511(c) applies only to "governmental entities." Both of these are "local governments" within the meaning of § 5–301 of the LGTCA,

but neither of these is a chartered county,[5] which is separately defined under § 5–301. As Judge James Eyler pointed out for this Court in *Houghton,* within the meaning of LGTCA, "municipal corporations" are cities, towns and villages, 183 Md.App. at 34, 959 A.2d 816, and "a governmental entity" is defined as a special taxing district situated within a single county. *Id.* at 35, 959 A.2d 816. This Court traced the legislative history of §§ 5–507 and 5–511 and concluded that neither section referred to or had application to a chartered county. *Id.* at 35–40, 959 A.2d 816.

Appellants would derive sustenance from certain language of the Court of Appeals in *Livesay v. Baltimore County,* 384 Md. 1, 862 A.2d 33 (2004). In *Livesay,* a former jail inmate sued Baltimore County for damages he suffered during an attempted suicide by hanging, claiming that a guard was negligent in failing to immediately cut him down before summoning help. *Id.* at 4–6, 862 A.2d 33. The Court of Appeals held that the guard was entitled to qualified immunity as a public official who was performing a discretionary act in the scope of his duties, and that the city was entitled to advance that defense when the guard was sued under the LGTCA. *Id.* at 17–18, 862 A.2d 33. In the course of the opinion, the Court discussed § 5–507(b)(1) and held, consistent with its earlier holding in *Lovelace v. Anderson,* 366 Md. 690, 704, 785 A.2d 726 (2001), that the purpose of § 5–507(b)(1) "was to codify existing public official immunity, and not to extend the scope of qualified immunity beyond its Maryland common law boundaries." *Livesay,* 384 Md. at 12, 862 A.2d 33. The Court of Appeals did not, however, decide that § 5–507(b)(1) applied directly to that case, but instead analyzed the case under principles of common law public immunity. *Id.* Nor did the Court make any reference to § 5–507(b)(2), which deals with a municipal corporation's qualified immunity involving motor vehicle torts committed by public officials.

---

5. Prince George's County is a chartered county, established under Article 25A of the Maryland Code.

Accordingly, appellants' contention that *Livesay* stands for the proposition that § 5–507 applies to the counties is in error. The substance of subsection (b)(1) applies equally to municipal corporations and the counties because it is a statement of common law public official immunity, which is applicable to both. Moreover, as Judge James Eyler pointed out for this Court in *Houghton,* 183 Md.App. at 34, 959 A.2d 816, counties are not municipal corporations within the meaning of § 5–507, and an extensive legislative history as well as the explicit differentiation of multiple statutory provisions supports that conclusion. Similarly, "governmental entities" covered by § 5–511 are not counties, but are special taxing districts as defined by Maryland Code Article 26, Section 1(c). *Id.* at 35, 959 A.2d 816. Clearly, one can be tripped up by semantics in this area, because "governmental entities" may generally have a much broader meaning and careful attention must be paid to the precise definitions employed by the legislature. Counties, municipal corporations, and "governmental entities" are all "local governments" within the meaning of the LGTCA, but they are separately listed in § 5–301(d), and they are given separate treatment in some instances.

Appellants question the wisdom of providing one cap in the case of a motor vehicle accident involving a public official of a county, and a separate, lower, cap in a motor vehicle accident involving an official of a municipal corporation or of a special taxing area. It may be that the legislature felt the larger cap of $200,000 was appropriate for the larger governmental units, but could be limited to insurance coverage provided by the smaller governmental units. In any event, it is abundantly clear that neither § 5–507(b)(2) nor § 5–511(c) applied to Prince George's County. Accordingly, judgment was properly entered in favor of appellee for the amount of $180,000.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANTS.**