995 A.2d 672

PRINCE GEORGE'S COUNTY, Maryland et al.

v.

Cleveland BRENT.

No. 71 Sept.Term, 2009.

Court of Appeals of Maryland.

May 17, 2010.

Rajesh A. Kumar, Special Counsel (Stephanie P. Anderson, County Atty., and Mary C. Crawford, Deputy County Atty., Upper Marlboro, MD), on brief for Petitioners.

Richard L. Jaklitsch (The Jaklitsch Law Group, Upper Marlboro, MD), on brief for Respondent.

ARGUED BEFORE BELL, C.J., HARRELL, BATTAGLIA, MURPHY, ADKINS, JOHN C. ELDRIDGE (retired, specially assigned) and LAWRENCE F. RODOWSKY (retired, specially assigned), JJ.

LAWRENCE F. RODOWSKY, Judge (retired, specially assigned).

This is an appeal from the judgment in Case No. CAL05–06034 in the Circuit Court for Prince George's County in which the Respondent, Cleveland Brent (Brent), sued the Petitioner, Michael W. Daily (Officer Daily). In an earlier case in the same court, CAL03–13492, Brent had obtained a judgment against Prince George's County, Maryland (the County).[1] Both actions asserted Brent's claim for damages for personal injuries sustained in one and the same automobile

---

1. When the cover sheet for the transmittal from the circuit court to the Court of Special Appeals of the record in No. CAL05–06034 was originally prepared, it was captioned, in typewriting, as *"Cleveland Brent v. Michael W. Daily."* At some point prior to transmittal of the record on April 13, 2008, the typewriting was scratched out and, by pen, in longhand, the caption was changed to *"Prince George's County, Maryland et al. v. Cleveland Brent."* The County was not a party to Civil CAL05–06034, but the longhand caption has been utilized on appeal.

accident with a police cruiser operated by Officer Daily, of the County's police force. The principal issue before us is whether the claim asserted in No. CAL05–06034 (*Brent II*) is merged in the judgment previously rendered in CAL03–13492 (*Brent I*). As hereinafter explained, we shall hold that there is no claim preclusion.

The accident occurred on December 10, 2002, at an interchange between Branch Avenue and Allentown Road. Officer Daily was traveling on Allentown Road. The accident occurred when he entered and proceeded through an intersection on a red traffic signal. In July 2003, Brent filed *Brent I,* naming only the County as a defendant. The action was tried for three days to a jury, and the issues were submitted on a verdict sheet. The jury found that "the defendant" was negligent, that "the defendant, Prince George's County," had not proved that Brent was contributorily negligent, and that the damages were $320,000. Judgment was entered against the County accordingly. The court (Lamasney, J.) reduced the judgment that had been entered on that verdict to $20,000, pursuant to Maryland Code (1974, 2006 Repl.Vol.), § 5–524 of the Courts and Judicial Proceedings Article (CJ). That section provides:

> "An owner or lessee of any motor vehicle registered under Title 13 of the Transportation Article may not raise the defense of sovereign or governmental immunity, to the extent of benefits provided by the security accepted by the Motor Vehicle Administration under § 17–103 of the Transportation Article, in any judicial proceeding in which the plaintiff claims that personal injury, property damage, or death was caused by the negligent use of the motor vehicle while in government service or performing a task of benefit to the government."

The "security accepted by the Motor Vehicle Administration" is $20,000 per person per accident. Maryland Code (1977, 2009 Repl.Vol.), § 17–103(b)(1) of the Transportation Article.

In an effort to avoid the effect of CJ § 5–524, Brent, in *Brent I* and after the verdict, filed a second amended com-

plaint in which he named Officer Daily as an additional defendant to the same claim. The court dismissed the second amended complaint with prejudice, at the same hearing at which it reduced the judgment against the County. Further, some weeks before the dismissal in *Brent I* of the second amended complaint, Brent had filed *Brent II* in which only Officer Daily was named as a defendant.

*Brent I* was appealed to the Court of Special Appeals. That appeal challenged the dismissal of the second amended complaint or, at least, its dismissal with prejudice. In an unreported opinion, that court vacated the dismissal of the second amended complaint, but remanded with direction that that dismissal be "without prejudice to appellant's right to file a separate cause of action against Officer Daily." The court cautioned, however, that it did "not intimate any view whatsoever of what should be the proper outcome of [Brent's] lawsuit against Officer Daily."

In *Brent II*, Officer Daily, by motions, raised defenses of *res judicata*, collateral estoppel, and immunity. The immunity argument was based upon CJ § 5–639(b)(1). It provides that

"[a]n operator of an emergency vehicle, who is authorized to operate the emergency vehicle by its owner or lessee, is immune from suit in the operator's individual capacity for damages resulting from a negligent act or omission while operating the emergency vehicle in the performance of emergency service."

Officer Daily's motions were denied at a hearing on March 30, 2007. The court (Krauser, J.) concluded that *res judicata* and collateral estoppel were not available to Officer Daily, because he was not a party to *Brent I*. Counsel for Brent represented to the court that the verdict sheets initially prepared by counsel for Judge Lamasney had included an issue based on the § 5–639(b)(1) defense, but that that issue had not been submitted to the jury at the request of counsel for the County. Based on the representations of counsel as to

what had transpired in *Brent I*,[2] the court denied summary judgment on the ground of emergency service immunity under § 5–639(b)(1) because it considered that there was a dispute of fact that had not been decided in *Brent I*.[3]

Shortly thereafter, the County paid Brent the $20,000 judgment in *Brent I*, subject to an agreement that the $20,000 would be credited against an enrolled judgment, if any, rendered for the plaintiff in *Brent II*. At a hearing in August 2007, the parties advised the court (Krauser, J.) of their agreement that, at trial, the only issue of fact for the jury would be whether, at the time of the accident, Officer Daily had been operating an emergency vehicle in the performance of emergency service, *i.e.*, the immunity defense under CJ § 5–639(b)(1). The parties also advised the court of their agreement that, if the jury found that Officer Daily was not acting at the time of the accident on an emergency call, then judgment would be entered in favor of Brent for $200,000 (against which the $20,000 paid by the County would be credited).[4]

At the trial of *Brent II* in December 2007, the court (Schiff, J.) submitted that lone issue to the jury. The jury answered

---

**2.** If any trial transcript for *Brent I* was prepared, it is not in the record before us and was not in the record before the court at the March 30, 2007 hearing.

**3.** At that hearing, the County also raised a defense under CJ § 5–507(b)(2), discussed in Part III, *infra*. If applicable, that section would have limited the damages to $20,000, and thus, would have been duplicative of the judgment in *Brent I*.

**4.** The parties' rationale for this agreement is CJ § 5–303(a) and (b), part of the Local Government Tort Claims Act (LGTCA). Section 5–303(b)(1) in relevant part provides that "a local government shall be liable for any judgment against its employee for damages resulting from tortious acts or omissions committed by the employee within the scope of employment with the local government." Section 5–303(b)(2) prohibits a local government from asserting "governmental or sovereign immunity to avoid the duty to defend or indemnify an employee established in this subsection." Section 5–303(a)(1) provides that "the liability of a local government may not exceed $200,000 per an individual claim ... for damages resulting from tortious acts or omissions, or liability arising under subsection (b) of this section[.]"

"NO" to the question, "Do you find by a preponderance of the evidence that Officer Michael W. Daily was in emergency service on December 10, 2002?". After Officer Daily's post-trial motion was denied, the court entered judgment against him in the amount of $180,000. Appeal was timely noted to the Court of Special Appeals.[5]

The Court of Special Appeals affirmed, *sub nom. Prince George's County v. Brent,* 185 Md.App. 42, 968 A.2d 630 (2009). Officer Daily raised three principal contentions:

> " '1. That the second action was barred because it split a single cause of action, or was otherwise barred by principles of res judicata and collateral estoppel;

> " '2. That the trial judge erred at the second trial by failing to grant appellant's Motion for Judgment because the evidence conclusively established that Officer Daily was operating his vehicle in emergency service; and,

> " '3. That the trial court erred in finding that §§ 5–507(b)(2) . . . did not apply to afford Officer Daily immunity as to any amount in excess of the County's existing motor vehicle insurance limit.' "

*Id.* at 48, 968 A.2d at 634.

The court held that there was no splitting of the cause of action, which continued to be the negligence claim against Daily. Every fact necessary to decision of that claim, that is, negligence, contributory negligence, causation, damages and vicarious liability, were fully litigated in *Brent I.* The only issue for trial in *Brent II* was an issue of defense by way of immunity, that was not litigated in *Brent I.* The court further found that there was sufficient evidence to sustain the jury's finding and that CJ § 5–507(b)(2), hereinafter discussed, was inapplicable as an additional basis for immunity.

From the affirmance by the Court of Special Appeals, Officer Daily, purportedly joined by Prince George's County,

---

**5.** The notice of appeal states that the "Defendants" note the appeal, but the notice is signed by an Associate County Attorney as "Attorney for Defendant Daily."

Maryland, petitioned this Court for a writ of certiorari. That petition essentially raised three questions:

I. Whether *Brent II* was barred by *res judicata.*[6]

II. Whether the circuit court erred in denying Officer Daily's motion for judgment and for judgment N.O.V.[7]

III. Whether Officer Daily was entitled to public official immunity under CJ § 5–507(b)(2).[8]

# I

■ Brent's claim against Officer Daily is not barred by *res judicata*, *i.e.*, claim preclusion. In determining the dimen-

---

**6.** The petition presented this question in the following terms:
"3. Whether Respondent violated the doctrine of *res judicata* when after a jury trial determined Petitioners negligence, contributory negligence, causation, damages and vicarious liability in motor tort, the lower court permitted Respondent to maintain a second action against Petitioner Daily for the sole purpose of litigating a claim that he was not entitled to immunity for responding to an emergency call in order to collect damages of $180,000 awarded in the first action to satisfy the LGTCA cap of $200,000."

**7.** The petition presented this question in the following terms:
"4. Whether a police officer in a marked police cruiser responding as backup to an emergency call with emergency equipment activated before entering a red light intersection but not in the intersection, is not entitled to immunity as a matter of law pursuant to Md.Code Ann., § 5–639 of the Courts and Judicial Proceedings Article because he was not the first dispatched officer and his delayed response to the emergency call before it was cleared during rush hour was a question for the jury and thus, legally sufficient evidence to sustain the jury's finding that Petitioner briefly activated his emergency equipment simply to pass through an intersection during rush hour traffic?"

**8.** The petition presented this question in the following terms:
"1. Whether public officials of local governments within the meaning of the ... LGTCA, entitled to qualified immunity pursuant to Md.Code Ann., § 5–507*(b)(1)* of the Courts and Judicial Proceedings Article for discretionary acts committed without malice as held in *Livesay v. Baltimore County*, 384 Md. 1[, 862 A.2d 33] (2004), should extend to include public officials of a charter county, such as Prince George's County, under § 5–507(b)(2), for purposes of defenses available under § 5–503(d) & (e) of the LGTCA?
"2. Whether the Legislature intended for public officials of some local governmental units within the meaning of the LGTCA to have a separate, lower, cap for damages arising out of the negligent operation of a motor vehicle because of insurance coverage provided by smaller governmental units versus larger governmental units?"

sions of a claim for applying the principles of claim preclusion, including the prohibition against splitting a cause of action, this Court has generally approved of the transactional approach found in § 24 of Restatement (Second) of Judgments (Restatement). *Kent County Board of Education v. Bilbrough,* 309 Md. 487, 499, 525 A.2d 232, 238 (1987); *Shum v. Gaudreau,* 317 Md. 49, 54–55, 562 A.2d 707, 710 (1989).[9] Clearly, the claim in *Brent I* and *II* is the same claim. It arises out of the same accident and the same injuries to Brent.

The oft quoted definition of *res judicata* by this Court is that found in *MPC, Inc. v. Kenny,* 279 Md. 29, 32, 367 A.2d 486, 488–89 (1977):

> "the doctrine of res judicata is that a judgment between the same parties and their privies is a final bar to any other suit upon the same cause of action, and is conclusive, not only as to all matters that have been decided in the original suit, but as to all matters which with propriety could have been litigated in the first suit[.]"

*See also* Restatement § 17.[10] The parties in *Brent I* and *II* are different so that the question arises whether master and servant are "privies" for purposes of the *res judicata* doctrine.

---

**9.** Restatement § 24 reads:

> " 'Dimensions of "Claim" for Purposes of Merger or Bar—General Rule Concerning "Splitting" ' ":
> " '(1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar (see §§ 18, 19), the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.
> " '(2) What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.' "

**10.** Section 17, in relevant part, reads:

> "A valid and final personal judgment is conclusive between the parties ... to the following extent:

In lieu of using the term, "privies," the Restatement analyzes that subject under a topic, "Substantive legal relationships resulting in preclusion." Section 51 addresses "Persons Having a Relationship in Which One Is Vicariously Responsible for the Conduct of the Other." In relevant part, § 51 reads:

> "If two persons have a relationship such that one of them is vicariously responsible for the conduct of the other, and an action is brought by the injured person against one of them, the judgment in the action has the following preclusive effects against the injured person in a subsequent action against the other....
>
> "(2) A judgment in favor of the injured person is conclusive upon him as to the amount of his damages, unless:
>
> . . . .
>
> "(b) Different rules govern the measure of damages in the two actions."

Comment a to Section 51 points out that a plaintiff may sue in one action both the primary obligor and the person vicariously responsible. "However, under prevailing procedural rules the injured person ordinarily *is not required to join both* and may decide to bring suit in the first instance against only one of them. If he does so, the rule of this Section becomes applicable." (Emphasis added).

Comment b to § 51 sets forth the rationale for the rule.

> "The injured person's claims against the primary obligor and the person vicariously responsible for his conduct are in important respects separate claims. First, neither of the obligors is ordinarily the representative of the other.... Second, a release of one does not ordinarily release the other.... Third, *one of the obligors may be immune from suit while the other is not,* and different statutes of limitations may be applicable to them. Finally, the claims are

---

"(1) If the judgment is in favor of the plaintiff, the claim is extinguished and merged in the judgment and a new claim may arise on the judgment[.]"

separate in the sense that *neither the rule against 'splitting' a claim nor the usual rules of joinder of parties require that they be maintained in a single action.*"

(Emphasis added).

Officer Daily argues that "[b]ecause the judgment in *Brent I* was ... based on the negligence of employee Appellant Daily, judgment in *Brent I* is a final bar to any other suit upon the same cause of action, and is conclusive, not only as to all matters that have been decided in the original suit, but as to all matters or any other claim arising from the same transactions and operative facts that could have been but was [*sic*] not raised in *Brent I.*" As we observed above, *Brent II* did not involve another claim. It is the same claim as *Brent I,* but asserted against another party. *Brent II* involved a different defense to the same claim. The circuit court concluded that that separate defense was not decided in *Brent I.* In a sense, there has been a splitting of defenses, inasmuch as the County could have raised the emergency response defense in *Brent I.*

Officer Daily also makes the following argument:

"As Appellee points out, Maryland Rule 2–211[11] was intended to assure that Appellant Daily's rights are not adjudicated unless he had his day in court and to prevent multiplicity of litigation by assuring determination of the entire controversy in a *single proceeding* .... If Appellee had a claim against Appellant Daily as to whether he was in emergency service, he was mandated under well established caselaw to bring that claim, not because Appellants are advancing a new mandatory joinder rule."

(Emphasis in original). The Court of Special Appeals has held that, under Maryland law, as in other jurisdictions, "an employee is not a necessary party to a suit against an employer on the theory of vicarious liability." *Market Tavern v. Bowen,* 92 Md.App. 622, 640–41, 610 A.2d 295, 305, *cert. denied,* 328 Md. 238, 614 A.2d 84 (1992). We understand Officer Daily's argument to be that, although Brent was not required to join

---

11. Maryland Rule 2–211 deals with, "Required joinder of parties."

him in *Brent I,* Brent's decision not to do so has resulted in claim preclusion.

Our research has disclosed a few cases, reviewed below, in which a tort plaintiff first sued only the master or servant, obtained judgment, and then sued the other. So long as the claim has not been satisfied, the tort plaintiff is permitted to do so. Here, the claim has not been satisfied. The parties have agreed that, if Brent prevailed on the emergency issue in *Brent II,* the damages would be $200,000, less credit for the $20,000 previously paid by the County.

In *Melikian v. Corradetti,* 791 F.2d 274 (3d Cir.1986), the plaintiffs initially sued a corporation on a fraud claim. Judgment was rendered for the plaintiffs, but the judgment was not satisfied because of the corporation's insolvency. They sought to amend the original complaint to join the principals of the corporation, but the trial court would not permit the amendment. Consequently, the plaintiffs sued the principals in a separate action. That action was dismissed by the trial court on a number of grounds, including splitting of the cause of action. The Third Circuit reversed. Applying the law of New Jersey in effect when the cause of action arose, the court held that " 'a claim against a person who was not a party to the initial litigation is ordinarily not precluded from being subsequently litigated even if it is the same as or transactionally related to the claim which is the subject of the initial litigation.' " *Id.* at 280 (quoting *Bates Marketing Assocs., Inc. v. Lloyd's Electronics, Inc.,* 190 N.J.Super. 502, 464 A.2d 1142, 1144 (1983), *appeal dismissed,* 97 N.J. 703, 483 A.2d 211 (1984)).

An historical review of the issue before us is found in *Sherwood v. Huber & Huber Motor Express Co.,* 286 Ky. 775, 151 S.W.2d 1007 (1941). The court began by reviewing the common law, at which master and servant could not be joined in one action, where the master's liability was derivative, because the cause of action against the actual tortfeasor lay in trespass while that against the party derivatively liable lay in case. The law evolved, however, to consider that the liability

was joint and several. That is the rule in Maryland. *Bern-heimer–Leader Stores, Inc. v. Burlingame,* 152 Md. 284, 136 A. 622 (1927). The Kentucky court in *Sherwood* next analogized to the law relating to the effect of judgment against less than all joint tortfeasors. The court quoted 1 T.M. Cooley, *Cooley on Torts* § 82, at 259 (4th ed. 1932), where the author said:

"Whatever may have been the reason for proceeding at first against less than the whole, it is conceded on all sides that a previous suit against one or more is no bar to a new suit against the others, even though the first suit be pending, or have proceeded to judgment when the second is brought.

"The second, or even a subsequent suit may proceed until a stage has been reached in some one of them at which the plaintiff is deemed in law to have either received satisfaction, or to have elected to rely upon one proceeding for his remedy to the abandonment of the others."

Thus, in *Sherwood,* a passenger in a taxicab, that had collided with a truck, was not precluded from bringing a second action against the owners of the truck when, although the plaintiff had obtained judgment against the taxicab company and the driver of the truck, that judgment was not satisfied.

Similar reasoning was applied by the court in *McFadden v. Turner,* 159 N.J.Super. 360, 388 A.2d 244 (1978). That was a medical malpractice case in which the plaintiff initially sued a hospital. At a bifurcated trial, the hospital's liability was established. Those parties then reached a settlement for $9,500, expressly predicated on the $10,000 limit of liability that the hospital enjoyed under a New Jersey statute. That limitation did not extend to hospital employees, whom the plaintiff next sued. The defendants moved for summary judgment "[b]ecause of the identity of this cause of action and that prosecuted in the prior suit against the hospital" and because of "the so-called entire controversy doctrine." *Id.* at 364, 388 A.2d at 245. With leave, the defendants appealed from the denial of that motion. After pointing out that the

release of one joint tortfeasor no longer released all, the court stated:

"While that departure from the common law was formulated in the context of multiple acts of negligence committed by concurrent tortfeasors, each of whom was himself actually rather than merely vicariously liable, we see no reason why the rule should not apply as well to the single act of negligence for which both the actual wrongdoer and his master or principal are each independently liable. The rationale of the rule is equally apposite whether the liability is actual or vicarious—namely, that plaintiff is entitled to pursue all those who are independently liable to him for his harm until one full satisfaction is obtained."

*Id.* at 366–67, 388 A.2d at 246–47.

*See also Day v. Davidson,* 951 P.2d 378 (Wyo.1997) (holding that master and servant are not in privity, but that servant entitled to credit for damages obtained by plaintiffs on consent judgment against master in earlier suit on same negligence claim); *compare New Crawford Valley Ltd. v. Benedict,* 877 P.2d 1363 (Colo.App.1993) (holding fraud judgment against corporation no bar to later suit against corporation's directors on same claim).

New Jersey's experience with the "entire controversy doctrine" furnishes a particularly compelling reason for rejecting Officer Daily's contention that, because he could have been sued in *Brent I,* the claim against him is precluded. The history of that doctrine is reviewed in H.M. Erichson, "PAPER SYMPOSIUM: THE DEMISE OF THE ENTIRE CONTROVERSY DOCTRINE: Of Horror Stories and Happy Endings: The Rise and Fall of Preclusion–Based Compulsory Party Joinder Under the New Jersey Entire Controversy Doctrine." 9 Seton Hall Const. L.J. 755 (1999).

Professor Erichson states that New Jersey attempted what no other jurisdiction had tried. "The experiment was this: the merger of claim preclusion and compulsory party joinder." *Id.* at 758. He explained:

"Outside of New Jersey, claim preclusion applies to claims that could have been brought, but does not extend to additional parties who could have been joined. Outside of New Jersey, compulsory party joinder is enforced by ordering joinder or by dismissing if joinder is impossible, not by precluding later claims against the unjoined party. Within New Jersey, while the experiment was underway, mandatory party joinder was enforced by imposing claim preclusion on litigants who failed to join a party in an earlier proceeding."

*Id.* at 759 (footnotes omitted).

The problems with the doctrine were: "First, it forces litigants to assert claims that otherwise would not have been asserted. Second, it creates excessive ancillary litigation concerning application of the doctrine." *Id.* at 769–70.

Professor Erichson considered that the New Jersey Supreme Court "plunged into its party joinder experiment in 1989" in *Cogdell v. Hospital Center at Orange,* 116 N.J. 7, 560 A.2d 1169 (1989). He described the result:

"As the New Jersey courts enforced the new party joinder mandate, the rule drew an unenthusiastic response. Judges and rulemakers, concerned about the implications of the rule on various types of cases, began to carve out exceptions to the doctrine. In 1994, the gripes of bench and bar coalesced in a recommendation by the New Jersey Supreme Court's Civil Practice Committee that the Supreme Court overrule *Cogdell* and abandon the entire controversy doctrine mandatory party joinder rule. The Committee's recommendation went unheeded."

9 Seton Hall Const. L.J. at 762 (footnotes omitted).

The turning point, the author tells us, arrived in 1997 in *Olds v. Donnelly,* 150 N.J. 424, 696 A.2d 633 (1997), where the New Jersey Supreme Court acknowledged that the doctrine "had not worked out as the court had expected," and it requested its Civil Practice Committee to reexamine the entire controversy. 9 Seton Hall Const. L.J. at 768.

For these reasons, we decline to hold that Brent's unsatisfied claim from *Brent I* precluded its assertion in *Brent II* simply because Officer Daily had not been joined in *Brent I*.[12]

## II

 Officer Daily contends that his motion for judgment at the close of the plaintiff's case, that was renewed in his motion for judgment n.o.v., was erroneously denied.[13] In reviewing the denial of a motion for judgment n.o.v., we assume the truth of all credible evidence and inferences therefrom, which we consider in the light most favorable to the party against whom the motion was made. *Impala Platinum v. Impala Sales*, 283 Md. 296, 389 A.2d 887 (1978). The Court of Special Appeals in *Brent II* fully reviewed the evidence and found that it was legally sufficient. *Prince George's County v. Brent*, 185 Md.App. at 49–52, 968 A.2d at 635–36. We agree with that analysis, which we shall briefly review.

The accident occurred at 4:48 p.m. on December 10, 2002, in the area where Branch Avenue (Md. Route 5) and Allentown Road (Md. Route 337) interchange. Branch Avenue, which we shall consider runs north and south, overpasses Allentown Road, which we shall consider runs east and west. The interface is a "diamond" interchange, and not a cloverleaf. We are concerned with two traffic signals, one of which controlled eastbound traffic on Allentown Road and was locat-

---

**12.** Officer Daily also argues issue preclusion in his brief, apparently contending that the emergency response issue was implicitly adjudicated in *Brent I*. Issue preclusion is not before us because it was not raised in the certiorari petition. See n. 6. Even if the issue were implicitly raised by the question presenting *res judicata,* the verdict sheet from *Brent I* contradicts the assertion.

**13.** Officer Daily also alleges error in the denial of his pretrial motion for summary judgment. That issue is not before us because it was not included in the certiorari petition. See n. 7. In any event, if reviewable, we would find no abuse of discretion in the denial. *See Metropolitan Mtg. Fund v. Basiliko,* 288 Md. 25, 415 A.2d 582 (1980); *Johns Hopkins University v. Ritter,* 114 Md.App. 77, 689 A.2d 91 (1996), *cert. denied,* 346 Md. 28, 694 A.2d 950 (1997).

ed west of the west parapet of Branch Avenue (intersection one). The other signal controlled traffic from the ramp for traffic that had been northbound on Branch Avenue and that intended to proceed westbound on Allentown Road (intersection two). The collision occurred as Brent, on a green light, was making a lefthand turn from the ramp at intersection two and was proceeding across the eastbound lanes of Allentown Road to the westbound lanes. Officer Daily, proceeding eastbound on Allentown Road, after having had gone through a red traffic signal at intersection one, struck Brent's vehicle while both were under the overpass.

From the testimony of a driver and passenger in a vehicle stopped for the red light at intersection one, in the middle lane for eastbound traffic on Allentown Road, the jury could find that Officer Daily approached those witnesses from the rear without siren or flashing lights activated. He activated those signals because standing cars in three lanes of traffic blocked his progress. By sounding his cruiser's air horn, he caused the car to the right of the witnesses to move to the side, and he then turned off the various signals after he proceeded through the red light at intersection one to the collision with Brent at intersection two.

In this Court, Officer Daily argues that "[t]he lower court's decision to permit the jury to consider evidence of Appellant Daily's failure to display lights or audible sounds was legally flawed because the law does not require it nor is it dispositive of immunity." He cites *Taylor v. Mayor & City Council of Baltimore*, 314 Md. 125, 549 A.2d 749 (1988), and *Sullivan v. Costanza*, 258 Md. 672, 267 A.2d 87 (1970). These cases hold that the failure to use signals merely strips an authorized vehicle of its privilege to proceed without regard to speed regulations, traffic devices, and other rules of the road, but that, despite such failure, the vehicle remains an emergency vehicle "during an emergency." *Taylor*, 314 Md. at 129, 549 A.2d at 751.

■ Officer Daily's argument fails to recognize that "a driver's immunity is predicated on 1) the performance of

'emergency service' and 2) the use of an 'emergency vehicle.' "
*Id.* at 127, 549 A.2d at 750. The argument further fails to
recognize that, in this case, there was a disputed issue wheth-
er Officer Daily was, in fact, in emergency service. The
relevance of Officer Daily's having approached intersection
one without signaling devices activated, and his having deacti-
vated the signaling devices, once he had cleared the obstruct-
ing vehicles at the red light at intersection one, tended to
prove that he was not, in fact, in emergency service.

Officer Daily testified that he was responding to a priority
call that he had received when he was in the area of Allentown
Road and Temple Hills Road, about two miles from the scene
of the accident with Brent. Officer Daily said that, if he were
operating with flashing lights and sirens, that trip would take
approximately ten to fifteen minutes in rush hour traffic at
that time of day. The priority call to which he was respond-
ing, he said, was to check a report of a person with a weapon.

On the other hand, Brent introduced the County Police
Department's CAD record (computer aid dispatch report) for
that dispatch. It reflected that the responding officer was not
Officer Daily. The responding officer had been dispatched at
4:00 p.m., and he was on the scene of the possible gun wielder
by 4:20 p.m. The report reflected that there had not been any
assisting units. Thus, under Officer Daily's evidence, it took
him forty-eight minutes after the time of the dispatch to travel
to the point of the collision, although that trip, with emergency
signals activated, ordinarily would take as little as ten min-
utes. Further, the County's CAD record reflected that there
were no units assisting the responding officer on the call.

Brent argued to the jury that Officer Daily's justification for
emergency service was a post-collision afterthought. The
circuit court did not err in allowing the jury to resolve this
factual conflict.

### III

Officer Daily's remaining contention is that he was entitled,
as a matter of law, to the immunity provided by CJ § 5–
507(b)(2). The relevant portions of § 5–507 read:

"(b) *Nonliability of officials generally; torts involving motor vehicles.*—(1) An official of a municipal corporation, while acting in a discretionary capacity, without malice, and within the scope of the official's employment or authority shall be immune as an official or individual from any civil liability for the performance of the action.

"(2) An official of a municipal corporation is not immune from liability for negligence or any other tort arising from the operation of a motor vehicle except as to any claim of damages in excess of the limits of any applicable policy of motor vehicle liability insurance."

Officer Daily's submission is that he is a public official and that the County is a "municipal corporation" within the intendment of § 5–507(b)(2). Thus, the damages against him are limited to $20,000, the undisputed limit under the certificate of self-insurance carried by the County.

This submission rests on *Livesay v. Baltimore County*, 384 Md. 1, 862 A.2d 33 (2004). Livesay was confined in the Baltimore County jail where he attempted suicide. He sued Baltimore County and a number of individuals, claiming negligence in their response to his attempt. For our purposes, the relevant individual defendant was the Corrections Officer who was the first responder to the occurrence. That defendant asserted public official immunity under § 5–507(b)(1). In that connection, this Court said:

"We have held that the purpose of § 5–507(b)(1) 'was to codify existing public official immunity, and not to extend the scope of qualified immunity beyond its Maryland common law boundaries.' *Lovelace v. Anderson*, 366 Md. 690, 704, 785 A.2d 726, 734 (2001) (quoting *Ashton v. Brown*, 339 Md. 70, 116 n. 23, 660 A.2d 447, 470 n. 23 (1995)). As discussed *infra*, officials of Maryland counties enjoy common law public official immunity. Section 5–507(b)(1) codified the common law, and while it did not extend the scope of the common law, it did not limit it either. Under the common law, county public officials enjoy immunity; accordingly, despite the seemingly narrower drafting, § 5–

507(b)(1) applies to county as well as municipal officials. As appellees point out, a contrary holding would produce the absurd result that when city and county police respond to the same emergency, the former enjoy immunity but the latter do not. We do not believe the Legislature intended this result.

"Because we hold that § 5-507(b)(1) merely codified Maryland common law public official immunity, and because the case law on common law public official immunity is more developed, we shall analyze Fore's situation in that context." *Id.* at 12, 862 A.2d at 39. Applying common law public official immunity principles, this Court held that the Corrections Officer was a public official who, during the occurrence, was exercising public official discretion. This Court did not, in the opinion, review the legislative history of § 5-507.

Officer Daily points to the use of the term, "municipal corporation," in sub-subsections (b)(1) and (b)(2). Under ordinary rules of statutory construction, the same meaning should be applied to the common term in the two sections. Consequently, just as Baltimore County was a "municipal corporation" under (b)(1), so Prince George's County should be a municipal corporation under (b)(2).

The Court of Special Appeals in *Brent II* did not accept the above analysis. It said that this Court did not "decide that § 5-507(b)(1) applied directly to [*Livesay*], but instead analyzed the case under principles of common law public immunity." *Brent II*, 185 Md.App. at 54, 968 A.2d at 638. Nor did this Court's *Livesay* deal with § 5-507(b)(2).

The Court of Special Appeals in *Brent II* relied upon its opinion in *Houghton v. Forrest*, 183 Md.App. 15, 959 A.2d 816 (2008), *aff'd in part and vacated in part*, 412 Md. 578, 989 A.2d 223 (2010). Forrest had been arrested by Houghton, a Baltimore City police officer. Forrest sued, claiming intentional and constitutional torts. Officer Houghton did not prevail in the circuit court on immunity grounds, but the basis of the trial court's ruling was not clear. Thus, the Court of Special Appeals undertook an analysis of the possible bases

for immunity. It quickly concluded that common law public official immunity was not available, because the plaintiff claimed intentional and constitutional torts. *Id.* at 33–34, 959 A.2d at 827. Nor was CJ § 5–507 applicable, because "[m]unicipal corporations are cities, towns, and villages created under any general or special State law and are subject to Article XI–E of the Maryland Constitution." *Id.* at 34, 959 A.2d at 827. Further, because the Baltimore City police department is a State agency, Officer Houghton was not a municipal official. *Id.*

Turning to CJ § 5–511, an immunity statute employing the term, "governmental entity," the Court of Special Appeals reviewed in depth the legislative history of that section.[14] As part of that legislative history review, the court reviewed, in depth for comparison purposes, the legislative history of § 5–507. The court, in *Houghton,* concluded:

"Lastly, all of the documents in § 5–507's bill file mention the concept of immunity in connection with municipal corporation officials only. The above information suggests that § 5–507 did not codify common law public official immunity as a whole. Rather, § 5–507 extended immunity to municipal corporation officials. Therefore, § 5–511's use of § 5–507's language does not indicate that the General Assembly

---

**14.** CJ § 5–511 reads:

"(a) *Definitions.*—(1) In this section the following words have the meanings indicated.

"(2) 'Governmental entity' has the meaning stated in Article 26, § 1 of the Code.

"(3) 'Official of a governmental entity' has the meaning stated in Article 26, § 1 of the Code.

"(b) *Immunity generally.*—Subject to subsection (c) of this section, an official of a governmental entity, while acting in a discretionary capacity, without malice, and within the scope of the official's authority is immune as an official or individual from civil liability for any act or omission.

"(c) *Torts arising from operation of motor vehicles.*—An official of a governmental entity is not immune from liability for negligence or any other tort arising from the operation of a motor vehicle except as to any claim for damages in excess of the limits of any applicable policy of motor vehicle liability insurance."

intended to extend public official immunity to all governmental public officials when enacting § 5–511."

*Id.* at 39, 959 A.2d at 830. The court did not refer to the above-quoted portion of this Court's *Livesay.*

The Court of Special Appeals in *Brent II* was persuaded by the legislative history of § 5–507, as reviewed in *Houghton.* It held that the "governmental entity" intended in § 5–511 did not include Prince George's County.

Thus, there is a difference of opinion, perhaps in dicta, and perhaps not, between this Court's approach to the meaning of "municipal corporation," in § 5–507(b)(1) and that of the Court of Special Appeals in its *Houghton* and in its *Brent II.* Certiorari was granted in *Houghton,* and it was decided February 19, 2010. *Houghton v. Forrest,* 412 Md. 578, 989 A.2d 223. The opinion does not resolve or address the conflict.[15]

 Nor need we, in this case, decide whether *Livesay* should be reconsidered or the Court of Special Appeals' language in *Houghton* should be disapproved. This is because the facts of the matter before us do not require that we determine the scope of the term "municipal corporation" in § 5–507(b)(1) or (2).

 Sub-subsection (b)(1) confers immunity, and sub-subsection (b)(2) withdraws that same immunity, but only to the extent of automobile insurance coverage. The immunity contemplated in both subsections is common law public official immunity. *See Livesay,* 384 Md. at 12, 862 A.2d at 39 (stating that the purpose of § 5–507(b)(1) " 'was to codify existing public official immunity,' " not to extend its scope); *Houghton,* 183 Md.App. at 38, 959 A.2d at 830 (stating that § 5–507, without distinguishing between subsections, "did not codify common law public official immunity as a whole," but extended it to municipal corporation officials). To the extent that

---

**15.** This Court's *Houghton* affirmed the Court of Special Appeals' holding that common law public official immunity does not apply to intentional torts.

immunity operates above the limits of automobile insurance under § 5–507(b)(2), it is common law public official immunity in statutory form.

■ "Common law public official immunity is reserved for public officials (as opposed to mere employees) who perform negligent acts during the course of their discretionary (as opposed to ministerial) duties." *Houghton,* 412 Md. at 585, 989 A.2d at 227; *Livesay,* 384 Md. at 12, 862 A.2d at 39; *Lovelace v. Anderson,* 366 Md. 690, 714, 785 A.2d 726, 739 (2001); *Williams v. Mayor & City Council of Baltimore,* 359 Md. 101, 137, 753 A.2d 41, 61 (2000); *James v. Prince George's County,* 288 Md. 315, 323, 418 A.2d 1173, 1178 (1980).

*James v. Prince George's County, supra,* addressed whether the driving of a County ambulance "in response to a call for assistance," 288 Md. at 318, 418 A.2d at 1175, constituted discretionary activity so as to satisfy one of the elements required for common law public official immunity. This Court said:

> "The driving of an emergency vehicle such as an ambulance or fire truck requires, as does the driving of any automobile, that a number of decisions be made with regard to the manner of operation. Such decisions, however, involve to minimal degree, if at all, the exercise of discretion with regard to the State's sovereignty. While State law grants certain privileges to the operators of these vehicles when using audible and visual signals, it 'does not relieve the driver of an emergency vehicle from the duty to drive with due regard for the safety of all persons.' In light of this section, there is minimal discretion on the part of a fire truck driver as to how he drives; but even if this statute did not exist, we would nevertheless hold that ordinarily the operation of a vehicle by any one, including a 'public official,' is a mere ministerial act."

*Id.* at 327–28, 418 A.2d at 1180 (citations and footnote omitted). *See also Boyer v. State,* 323 Md. 558, 577, 594 A.2d 121, 130 (1991); *Ashburn v. Anne Arundel County,* 306 Md. 617, 623–24, 510 A.2d 1078, 1081 (1986); Restatement (Second) of

Torts § 895D, cmt. (h) (1979) (driving vehicles by public officials is ordinarily ministerial).

In the instant matter, where the jury found that Officer Daily was not acting in emergency service when the collision with Brent occurred, his argument for common law public official immunity, via CJ § 5–507(b)(2), loses all force.

For the foregoing reasons, we shall affirm.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED.**

**COSTS TO BE PAID BY THE PETITIONER.**

Judge MURPHY joins in the judgment only.